IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEDDY STRATFORD APPAREL LLC, and BRYAN DAVIS, | ) ) ) Case No. 23- |
| Plaintiffs, | ) ) |
| vs. | ) Judge: ) ) Magistrate: |
| THE ENTITIES listed on EXHIBIT 1, | ) ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiffs hereby file this Complaint for, *inter alia*, trademark infringement, copyright infringement, patent infringement, counterfeiting, unfair competition, and false designation of origin, and related claims under Illinois state law against Defendants, including misappropriation of the likeness of Plaintiff Bryan Davis, on personal knowledge as to Plaintiffs' own activities and on information and belief as to the activities of others:

**The Parties**

1. Plaintiff Teddy Stratford Apparel LLC ("Teddy Stratford") is a limited liability company organized under the laws of Delaware. Teddy Stratford sells high-end "Zip Fit Shirts" that are protected by patents, copyrights, and trademarks registered with the United States Patent and Trademark Office and the United States Copyright Office. It maintains a website at www.teddystratford.com.

2. Plaintiff Bryan Davis ("Davis") is the President of Teddy Stratford who also acts as a spokesmodel for the company in images and videos produced by Teddy Stratford. (Unless otherwise specified, Plaintiff Teddy Stratford Apparel, LLC and Plaintiff Bryan Davis shall be collectively referred to as "Plaintiff.)

1

3. Defendants identified on Exhibit 1, a copy of which will be filed with the Court under seal pending approval of the Plaintiffs' motion to file certain documents under seal filed contemporaneously herewith, are all believed to be individuals, unincorporated business associations, and business entities who, upon information and belief, reside in the United States and foreign jurisdictions. The true names, identities and addresses of many of the Defendants are currently unknown.

4. Many of the Defendants conduct their operations through fully interactive commercial websites hosted independently and/or on various e-commerce sites, such as Meta, YouTube, Amazon, eBay, Wish, Alibaba, Ali Express, Shopify, Shoplazza, etc. ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

5. Through their operation of the Infringing Webstores, Defendants are directly contributing to, inducing, and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators and/or suppliers. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. The identities of many of the Defendants are presently unknown. If their identities become known, Plaintiff will promptly amend this Complaint to identify them.

## JURISDICTION AND VENUE

6. This is an action for trademark counterfeiting, trademark, patent and copyright infringement, and unfaircompetition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), for unlawful and deceptive acts and practices under the laws of the State of Illinois, and misappropriation of likeness under the Illinois Right to Publicity Act ("IRPA") (765 ILCS 1075, *et seq*.).

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. §1367, over Plaintiff's claims for unlawful and deceptive acts and practices and misappropriation of likeness under the laws of the State of Illinois.

8. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in the District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

## BACKGROUND

10. Plaintiff is engaged in the business of manufacturing, distributing, and retailing

3

unique "Zip Fit Shirts" employing patented technology worldwide, including within the Northern District of Illinois (collectively, the "Products") under the trademarks, copyrights, and patents (the "Marks") identified in Exhibit 2, which will also be filed under seal pending this Court's approval of Plaintiff's motion to file certain documents under seal.

11. Defendants' advertising, marketing, and sale of the Counterfeit Products in violation of Plaintiff's intellectual property rights is causing irreparable damage to the Plaintiff, the Marks, and its brand. In all of the cases that Plaintiff investigated, Defendants have simply cut-and-pasted Plaintiff's images and videos from Plaintiff's website, including the likenesses of Davis, and re-posted them on their webstores and websites as if they had created them.

12. Plaintiff is the owner of all rights, title, and interest in and to the Marks. The registration is valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. §1065. The registration for the Marks constitutes primafacie evidence of validity and of Plaintiff's exclusive right to use the Marks pursuant to 15 U.S.C. §1057(b).

13. Plaintiff's brand, symbolized by the Marks, is a recognized symbol of high-quality, patented apparel. As detailed below, Plaintiff has been using the Marks for many years in connection with the advertising and sale of Plaintiff's products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

14. The Marks have been widely promoted, both in the United States and throughout the world, specifically on Meta (a/k/a Instagram and f/k/a Facebook), YouTube, and TikTok. Many of the Defendants have simply cut-and-pasted Plaintiff's intellectual property to sell counterfeit products at unrealistically low prices, leading to a devaluation of Plaintiff's brand. For example, Plaintiff Davis is pictured below on the left from an image taken from www.TeddyStratford.com on August 30, 2023. On the right is the same image of Mr. Davis modeling an apparent Teddy

Stratford "Zip Fit Shirt" (advertised on the Defendant's site as an "Oxford Stretch Zip Shirt") displayed the same day but for "49% off".

 

Consumers, potential consumers, and other members of the public not only associate Plaintiff's Products with exceptional materials, style, and workmanship, but also recognize the Plaintiff's Products sold in the United States originate exclusively with Plaintiff.

15. As of the date of this filing, Plaintiff's Products are sold only online through its website. Plaintiff has not authorized any third parties to sell its products and Plaintiff maintains quality control standards for all of its Products.

16. The Marks are highly visible symbols of the Products of excellence in quality and uniquely associated with Plaintiff.

17. The Marks have never been abandoned by Plaintiff.

18. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Marks.

19. Upon information and belief, at all times relevant hereto, Defendants in this action

have had full knowledge of Plaintiff's ownership of the Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

20. Plaintiff has identified over 100 websites and webstores using the Plaintiff's Marks and Davis's likeness and representing that their Counterfeit Products employ Plaintiff's patents. The Defendants' websites and webstores are intentionally designed by Defendants to resemble authorized retail Internet stores selling genuine Products that Defendants had reproduced, displayed, anddistributed without authorization or license from Plaintiff in violation of Plaintiff's rights and interests.

21. Defendants' use of the Marks and Mr. Davis's image on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have manufactured, imported, exported, distributed, offered for sale, and sold Counterfeit Products using the Marks and continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Marks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine Products. The Plaintiff did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of authentic Products throughthe Infringing webstores, often by stealing and copying Plaintiff's copyrighted images and photographs of

Plaintiff's genuine products in violation of the Plaintiff's copyrights. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Products.

29. Defendants also deceive unknowing consumers by using the Marks without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Products and in consumer product searches within the Webstores.

30. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new websites and webstores on various platforms using the identities listed in Exhibit 1, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

31. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the Marks unless preliminarily and permanently enjoined.

32. Plaintiff has no adequate remedy at law.

**COUNT ONE**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. §1114)**

33. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

34. The Marks and the goodwill of the business associated with it and the Plaintiff's

business in the United States and throughout the world are of great and incalculable value. The Marks is highly distinctive and has become universally associated in the public mind with Plaintiff's Products. Consumers associate the Marks with the Plaintiff as the source of the very highest quality products.

35. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Marks and the fact that Defendants' Counterfeit Products are sold using marks which is identical or confusingly similar to the Marks, the Defendants have manufactured, distributed, offered for sale and/or sold theCounterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff products, in or affecting interstate commerce.

36. Defendants' use of copies or approximations of the Marks in conjunction with Defendants' Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill and sales.

37. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

### COUNT TWO
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. §106)

38. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. Plaintiff is the owner of copyrights, including copyrights to it website (www.teddystratford.com) as well as it multiple videos that it uses to promote and sell it Products. *See* U.S. Trademark, Copyright, and Patent registrations attached hereto as Exhibit 2.

40. Plaintiff is the sole owner of original visual productions fixed in a tangible medium of production. These include original video productions that the founder created himself.

41. The Defendants have produced, reproduced, and publicly displayed the Plaintiff's protected work without Plaintiff's authorization, in violation of 17 U.S.C. §106.

42. By committing such acts, the Defendants have infringed the Plaintiff's Copyright. Section 501 of Title 17 of the U.S. Code provides that "anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122… is an infringer of the copyright."

43. The Defendants acted willfully and with the intent to gain financially from the Plaintiff's protected work. Defendants were, or should have been, aware of Plaintiff's copyrights. Defendants cannot contest having knowledge of Plaintiff's Copyrights, yet the Defendants continues to advertise and display Plaintiff's protected works.

44. Defendant's willful infringement entitles the Plaintiff to actual damages and Defendant's profits, in an amount to be determined at trial, but not less than $3,000,000. At its election prior to entry of judgment, Plaintiff may opt for statutory damages and may seek recovery of its attorneys' fees, to the extent available under the law.

45. The Defendants' conduct is causing immediate and irreparable harm and injury to the Plaintiff, who has no remedy at law, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court

## COUNT THREE
## PATENT INFRINGEMENT

46. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

47. Plaintiff is the rightful owner U.S. registered patents US 9,750,285,B2, and US D775,457 S, as well as EUIPO Design No. 002868018. The Defendant is aware of the existence of these Patents and their enforceability.

48. Defendants have infringed and continue to infringe Plaintiff's patents by making, importing, exporting, using, offering to sell, or selling its Counterfeit Products within the U.S., including within this District. Defendant's Counterfeit Products' ornamental design is substantially similar to the design covered Plaintiffs' patents.

49. Defendants' infringement of the Plaintiff's patents are substantiated by online reviews written by consumers that show they were under the impression the Counterfeit Products actually originated from Plaintiff. Indeed, an ordinary buyer or potential buyer would most likely not notice the Counterfeit Products were different from Plaintiff's shirts.

## COUNT FOUR
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a))

50. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

51. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

52. By misappropriating and using the Marks, genuine product images and trade names, Defendants misrepresent and falsely describe to the general public the origin andsource of

10

the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

53. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

54. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), in that Defendants' use of the Plaintiff's mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

55. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**COUNT FIVE**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 510)**

56. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

57. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

58. By misappropriating and using the Marks, genuine product images and tradenames, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such

merchandise.

59. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offerfor sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

60. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.*, in that Defendants' use of the Marks, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

61. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT SIX
## ILLINOIS RIGHT TO PUBLICITY ACT ("IRPA")
## (765 ILCS 1075, et seq.)

62. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

63. Defendants in this case used images and videos of Plaintiff Davis on their internet-based websites and webstores on and prior to August 30, 2023, in an effort to deceive potential consumers that Davis was promoting their products.

64. Plaintiff Davis has authorized Plaintiff Teddy Stratford Apparel, LLC to use his likeness in commerce as contemplated by 765 ILCS §1075/15.

65. Plaintiff Davis is an individual as that term is contemplated under 765 ILCS §1075/5 and who is living as contemplated under 765 ILCS §1075/30.

66. Defendants have used the likeness of Plaintiff Davis in commerce and for a commercial purpose without his written consent, previous or otherwise, from any entity or individual.

67. Defendants intended for consumers to rely, and consumers did in fact rely, on Defendants' deceptions.

68. The deceptions involved the sale of counterfeit products and took place in the course of trade and commerce.

69. Defendants have violated 765 ILCS §1075/30 and such violations have been in a willful manner.

70. Plaintiff has suffered actual damage to the plaintiff occurred because (a) Defendants did not license or pay Davis for the use of his image and (b) consumers believe that Davis was endorsing the Defendants' counterfeit products which were of lesser quality than Plaintiff's products.

71. The damage complained of was proximately caused by the Defendants' deceptions.

72. Defendants' aforesaid acts are in violation of the Illinois Right to Publicity Act, 765 ILCS 1075, *et seq*.

73. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff Davis will continue to suffer irreparable harm and injury to his reputation.

74. Plaintiff is also entitled to his reasonable attorneys' fees, as well as statutory damages in the amount of $1,000 per claim and punitive damages for the Defendants' willful and persistent misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff

on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

(i) using the Marks or any reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the distribution, advertising, offer forsale and/or sale of merchandise not the genuine products of the Plaintiff; and

(ii) passing off, inducing, or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision ofPlaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing the Marks and damaging Plaintiff's goodwill and competing unfairly with Plaintiff in any manner;

(v) shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vi) using, linking to, transferring, selling, exercising control over, or otherwise owningor operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit

Products;

    (vii)    operating and/or hosting websites at the Infringing Webstores and any other domainnames registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's mark or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Marks; and,

    (viii)    registering any additional domain names that use or incorporate any of the Marks;

2.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with thembe temporarily, preliminarily, and permanently enjoined and restrained from:

    (i)    displaying images protected by the Plaintiff's Copyright in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with thePlaintiff's Trademark and/or Copyright; and

    (ii)    shipping, delivering, holding for sale, distributing, returning, transferring, or otherwisemoving, storing, or disposing of in any manner products or inventory not manufactured byor for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's copyright or any reproductions, counterfeit copies, or colorable imitations thereof;

3.    That Defendants, within ten (10) days after service of judgment with notice of entry thereofupon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all

15

injunctive relief ordered by this Court;

4. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Marks;

5. That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Marks be increased by a sum not exceedingthree times the amount thereof as provided by law as provided by 15 U.S.C. §1117;

6. In the alternative, that Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's Marks counterfeitedby each Defendant;

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8. Grant Plaintiff such other and further legal relief as may be just and proper under the circumstances.

                                                Respectfully submitted,

                                      By: /s/ Patrick M. Jones
                                              Patrick M. Jones, one of
                                              the Attorneys for Plaintiffs

**AEGIS LAW**

Patrick M. Jones (IL #6271256)
John N. Julian (IL #6211254)
Willis Tower
233 South Wacker Drive, 44th Floor
Chicago, Illinois 60606
Tel: (312) 329-0010
Email: pjones@aegislaw.com
Email: jjulian@aegislaw.com