**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TEDDY STRATFORD APPAREL LLC.,** | ) | |
| **And BRYAN DAVIS,** | ) | **Case No. 23-10799** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Judge: Andrea R. Wood** |
| **vs.** | ) | |
| | ) | |
| **THE ENTITIES listed on EXHIBIT 1,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE*
MOTION FOR ENTRYOF A (1) TEMPORARY RESTRAINING ORDER,
(2) ASSET RESTRAINING ORDER, (3) EXPEDITED DISCOVERY
ORDER, AND (4) SERVICE OF PROCESS BY EMAIL**

i

**Table of Contents**

I.    Introduction……………………………………………………………………    1

II.   Statement of Facts……………………………………………………………    2

      A.    Plaintiffs' Trademark and Products………………………………    2

      B.    Defendants' Aggressive and Blatant Counterfeiting Activities…….    2

III.  Argument    ……………………………………………………………    3

      A.    Plaintiffs Satisfy the Requirement for a Temporary Restraining
            Order………………………………………………………………..    6

            1.    Plaintiffs Will Likely Succeed on Their Trademark Infringement
                  And Counterfeiting Claim…………………………………..    7
            2.    Plaintiffs are Likely to Succeed on Their Copyright Infringement
                  Claim……………………………………………………………    8
            3.    Plaintiffs are Likely to Succeed on Their Patent Infringement……    9
            4.    Plaintiffs are Likely to Succeed on Their False Designation of
                  Origin Claim……………………………………………………    11
            5.    Plaintiffs are Likely to Succeed on Their Unfair Competition and
                  Deceptive Trade Practices Claim…………………………….    11
            6.    Plaintiff Davis is Likely to Succeed on His Illinois Right to
                  Publicity Claim………………………………………………    12

      B.    There is No Adequate Remedy at Law and Plaintiffs Are Likely to
            Suffer Irreparable Harm in the Absence of Preliminary Relief………    13

      C.    The Balancing of Harms Tips in Plaintiffs' Favor……………………    14

      D.    Issuance of the Injunction Is in the Public Interest……………………    14

      E.    The Equitable Relief Sought is Appropriate Under the
            Circumstances…………………………………………………………    15

      F.    An Order Preventing the Fraudulent Transfer of Assets is
            Appropriate……………………………………………………………    17

      G.    Plaintiffs are Entitled to Expedited Discovery…………………………..    18

      H.    Service of Process by Email is Warranted……………………………    20

      I.    A Bond Should Adequately Secured the Injunctive Relief……………    23

IV.   Conclusion…………………………………………………………………    24

## Table of Authorities

**CASES**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)………………… 7, 9

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998)…… 12

*Apple Inc. v. Samsung Electronics Co.*, Ltd., 735 F.3d 1352, 1371 (Fed. Cir. 2013)…. 11

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*,482 F. Supp. 2d 1065, 1078
(E.D. Wis. 2007)……………………………………………………………………….. 24

*Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)……………. 14

*CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 681 (7th Cir. 2001)……………… 8

*Cassell v. Snyders*, 990 F.3d 539 (7th Cir. 2021) ………………………………… 9

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001
WL 527404, *1 (N.D. Ill. May 15, 2001)………………………………………… 6

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) . 5

*CSC Holdings,Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002)……………………… 18

*Cycling Sports Group, et al. v. Does 1-100*, No. 19-cv-5471 (N.D. Ill. Aug. 27,
2019) (unpublished)…………………………………………………………… 18, 22, 24

*Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations
Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021)
(unpublished)…………………………………………………………………… 16, 18, 22, 24

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)……………………… 18

*Dental Arts Lab, Inc. v. Studio 360 Dental Lab, LLC*, 2010 WL 4877708 *4 (N.D.
Ill. 2010)……………………………………………………………………… 5

*eBay, Inc. v. MercExchange*, LLLC, 547 U.S. 388 (2006)………………………… 10

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008)…………….. 10

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)……… 7, 13, 14

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015)……. 10

*Frerck v. John Wiley & Sons, Inc.*, 850 F.Supp.2d 889, 892 (N.D.Ill. 2012)………..   8

*Ford Motor Co. v. Lapertosa*, 126 F.Supp.2d at 463………………………………….   16

*G. Heilman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989)……………………………………………………………………………   7

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994)………………………………….……………………….   13

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)…………………………….   19

*Grupo Mexicano de Desarrollo, S.A. v. Allianz Bond Fund*, 527 U.S. 308 (1999)….   18

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010)  ………   24

*Helene Curtis Indus. Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977)………………………………………………………………..   13

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999)………   23

*Illinois v. Hemi Group LLC*, 622 F3d 754, 758 (7th Cir. 2010)……………………   6

*In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008)…….   23

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill 2009)……………..   23

*Ink & Rags, LLC v. The Partnerships listed on Schedule A*, No. 22-cv-07292 (N.D. Ill. Dec. 28, 2022) (unpublished)………………..……………………………   4

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)…………………………………………………………………………   13

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540F.2d 266, 274 (7th Cir. 1976)………………………………………………………………………………..   15

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008)………………………………………………   22

*Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735 (7th Cir. 2013)………………………………………………………   10

*Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002)……   16

*Krause Int'l Inc. v.Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994)…   14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)……………………………………………………………………….. 17, 18

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir. 1995)…………… 8

*Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)………….. 6

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D.Ill. Nov. 8, 2005)……………………………………………………. 18, 19

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C.1996)…………………………………………………….…… 10, 14

*Meridian Mut. Ins. Co. v. Meridan Ins. Group Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997)…………………………………………………………………………….. 9, 13

*Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358 (Fed. Cir. 2017)……. 10, 11

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025,2007 WL 269087, *6 (D. Guam Jan. 26, 2007)…………………………………………………………. 23

*Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F.Supp.669, 684 (N.D. Ill. 2005…… 7, 11

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)…… 19

*Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (unpublished)……………………… 16, 18, 22, 23

*Peng v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2021:cv-1344, 2021 WL 4169564 (N.D.Ill. 2021)…………………………… 9, 10, 11

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004)……………………………………………………………………… 22, 23

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002)…. 13

*Purdue Research Found. V. Sanofi Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)……………………………………………………………………………. 5

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989)………………… 23

*Re/Max N. Cent. Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001)………………… 13

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)…… 17, 18

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874, 877 (N.D. Ill. 2015)……………………………………………………….  6

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)………  21, 22

*Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593,*4 (W.D. Va. Mar. 1, 2005)……………………………………….  15

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F.Supp. 567, 579 (N.D. Ill. 1994)……………  12

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950)…………………  15

*TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)…………….  6, 14

*uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423 (7th Cir. 2010)……………  5

*Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)…………………  9

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007)……………………………………………………………………….  19

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990)……………………………………………………………………….  11

*Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983)…………………………………………………………  13

## STATUTES

15 U.S.C. § 1116(a)…………………………………………………………  15

15 U.S.C. §1117…………………………………………………………….  17

15 U.S.C. §1125(a)…………………………………………………………  11

Fed. R. Civ. P. 4(f)(3)……………………………………………………..  20, 21, 22

Fed. R. Civ. P. 26(b)(2)……………………………………………………  15, 20

Fed. R. Civ. P. 64…………………………………………………………  18, 19

Fed. R. Civ. P. 65…………………………………………………………  18, 19, 20

Fed. R. Civ. P. 65(b)………………………………………………………  4, 15

Fed. R. Civ. P. 65(d)(2)(C)………………………………………………..  15, 19, 20

## MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiffs Teddy Stratford Apparel, LLC and Bryan Davis (collectively referred to herein as "Plaintiff," unless otherwise specified) bring this action against Defendants, as identified on Exhibit 1 of the Complaint (collectively, the "Defendants") for Federal Trademark Counterfeiting and Infringement (Count I), Copyright Infringement (Count II), Patent Infringement (Count III), Unfair Competition and False Designation of Origin (Count IV), Illinois Uniform Deceptive Trade Practices Act (Count V), and the Illinois Right to Publicity Act (Count VI). (Plaintiffs hereby incorporate herein the allegations, exhibits and counts set forth in the Complaint; terms defined in the Complaint used also herein shall have the same meaning.) As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, bearing counterfeit versions of Plaintiffs' Marks, through various websites/webstores designed to mislead consumers that the products sold are genuine products of Plaintiff.

Defendants create websites and web stores and product listings for Plaintiffs' goods, all the while actually selling low-quality, unlicensed counterfeits to unknowing consumers. Defendants attempt to avoid liability by going to great lengths to conceal their identities, their assets, and the full scope of their counterfeiting operation. Plaintiffs are forced to file these actions to combat Defendants' counterfeiting and protect its U.S. Registered Trademark Nos. 88151021 ("Teddy Stratford") and 97383654 ("Zip Fit Shirt") (the "Marks"), to protect its rights in US Patent No. USD775,457 S and US Patent No. 9,750,285 B2 (the "Patents"), to protect its rights in its copyrighted material (the "Copyrights"), as well as to protect unknowing consumers from purchasing low-quality counterfeits over the internet.

Defendants deceive U.S. consumers, including consumers located in Chicago, Illinois, by selling products designed to look like the Teddy Stratford products and bearing the Plaintiffs' Marks

1

on websites to sell and/or offer for sale unlicensedand counterfeit products. To stop these activities, and Plaintiffs respectfully request that this Court issue *ex parte*:

    (1)    a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale and sale of counterfeit Plaintiff products;

    (2)    an order temporarily disabling the Infringing Webstores pending the issuance of a final judgment in this matter;

    (3)    an order temporarily restricting transfer of Defendants' assets topreserve Plaintiffs' rights to an equitable accounting;

    (4)    an order for expedited discovery allowing Plaintiffs to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of counterfeit Plaintiffs' products and Defendants' financialaccounts; and

    (5)    an order allowing service by electronic mail.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Products and Intellectual Property Rights

Plaintiff Teddy Stratford is a manufacturer, distributor, and retailer of high-quality men's shirts, namely the high-end "Zip Fit Shirt" and related apparel, which incorporate patented features. Plaintiffs' brand, symbolized by the Marks, is a recognized symbol of high-quality throughout the world. Plaintiffs registered the Marks which have been used exclusively and continuously and have not been licensed to third parties. *See* Declaration of Bryan Davis (the "Davis Decl."), at ¶¶3-4, 9, attached as Exhibit 1. Plaintiffs displays the Marks prominently on their products and advertising and have done so at significant cost to develop its brand. *Id*. Plaintiffs' products employ elements protected by the Patents. *Id.* at ¶¶7-8. Further, Plaintiffs' written materials, including web content, social media, videos and the like, are protected by the Copyrights. *Id.* at ¶¶3-4.

### B.    Defendants' Aggressive and Blatant Counterfeiting Activities

Defendants unabashedly advertise the sale of products bearing the Marks on websites and webstores displaying the Marks on images of Plaintiffs' products that have been "cut and pasted" directly from Plaintiffs' websites and/or highlight the Marks in their advertisements of the

Counterfeit Products. *Id.* at ¶13; Declaration of Patrick M. Jones (the "Jones Decl."), attached as Exhibit 2, at ¶7 and Exhibits B and C attached thereto (screenshots of Plaintiffs' sites compared with Defendants' infringing webstores and websites). After reviewing the Counterfeit Productsadvertised for sale on the Infringing Webstores, Plaintiffs confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Illinois by conducting "test purchases" using U.S. dollars, which were shipped to and received by residents of Chicago, Illinois. Davis Decl. at ¶15.

Defendants' use of the Marks causes and has caused irreparable damage to the Plaintiffs because counterfeiters like the Defendants take away Plaintiffs' ability to control the nature and quality of Counterfeit Products, which has not gone unnoticed by consumers. *See* Davis Decl., at ¶¶17-18 (referencing consumer complaints about Counterfeit Products). Loss of quality control over goods bearing the Mark and, in turn, loss of control over Plaintiffs' reputation, is neither calculable nor precisely compensable. *Id.*

Tactics used by Defendants to conceal their identities and assets, as well as the full scope of their counterfeiting operations make it virtually impossible for Plaintiffs to stop their activities without Court intervention. Based on previous cases of Webstores that unlawfully use a brand owner's trademarks to sell counterfeit products, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of a Webstore involved in counterfeiting, the requested relief is rendered ineffective and meaningless, because counterfeiters operate as a proverbial "moving target," beyond the effective reach of rights owners, seeking to enforce their rights.

## III. ARGUMENT

Defendants purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiffs' reputation and the goodwill symbolized by the Mark, as well as

3

to realize the benefits of the protected interests in Plaintiffs' patents. The Defendants further have willfully violated the Plaintiffs' trademark, patents and copyrights in a deliberate attempt to defraud consumers into believing the sales of counterfeit products are authorized and/or genuine. To stop Defendants' sale of Counterfeit Products, Plaintiffs respectfully request that this Court issue a temporary restraining orderordering, among other things, the freezing of Defendants' assets at the primary account level (the "Primary Accounts") – Webstores hosted by Aamzon.com, among others – and at the secondary account level (the "Secondary Accounts"), which include U.S.-based accounts linked to the Primary Accounts, *e.g.*, Chase, Bank of America, Silicon Valley Bank, Payoneer, etc., the identities of which only the Defendants and the Primary Account holders know. Without the relief requested by Plaintiffs' instant Motion, Defendants' activities will continue unabated, and Plaintiffs and consumers will suffer irreparable harm.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark counterfeiting, courts now regularly issue such orders. *See, e.g., Ink & Rags, LLC v. The Partnerships listed on Schedule A*, No. 22-cv-07292 (N.D. Ill. Dec. 28, 2022) (unpublished) (*ex parte* Temporary Restraining Order); *Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (same); *Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021). Copies of unpublished opinions cited herein are attached to the Declaration of Patrick M. Jones as Exhibit A. Rule 65(b) of the Federal Rules of Civil Procedure provides that that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

The entry of a temporary restraining order is appropriate in this case because it will immediately stop the Defendants from benefiting from their wrongfuluse of the Plaintiffs' patents,

Marks and images and preserve the *status quo* until such time as a hearing can be held. and preserve the *status quo* until such time as a hearing can be held. In the absence of a temporary restraining order, the Defendants can and likely will modify content, change hosts, and move any assets from the Primary and Secondary Accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise is often useless if notice is given to the infringers"). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* temporary restraining order.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiffs' business within this the Northern District of Illinois. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell his/her products to consumers within the State of Illinois. Without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiffs' asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc*. 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits."). Illinois courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, *4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision

of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales ... for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (same).

Through the fully interactive commercial internet websites and Webstores operated by each Defendant, each of the Defendants has targeted and solicited sales from Illinois residents by offering shipping to Illinois and have sold counterfeit Plaintiff products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

### A. Plaintiffs Satisfy the Requirements for a Temporary Restraining Order and Preliminary Injunction.

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F.Supp.3d 874, 877 (N.D. Ill. 2015) (citing *Long v. Board of Educ., Dist. 128*, 167 F.Supp.2d 988 (N.D. Ill. 2001)) *See also Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted). A party seeking to obtain a TRO or preliminary injunction must demonstrate:

(1)     that its case has some likelihood of success on the merits;

(2)     that no adequate remedy at law exists; and

(3)     that it will suffer irreparable harm if the injunction is not granted.

*See TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity,"

when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v.Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

### 1.    *The Plaintiffs are Likely to Succeed on their Trademark Infringement Claim.*

To prove a *prima facie* case of trademark infringement, Plaintiffs must show that: (1) their marks is distinctive enough to be worthy of protection; (2) Defendants are not authorizedto use the Plaintiffs' Trademarks; and (3) Defendants' use of the Plaintiffs' trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiffs satisfy all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, the Plaintiffs' Marks are inherently distinctive and registered with the United States Patent and Trademark Office on the Principal Register. The Marks have been used exclusively and continuously by Plaintiffs since at least as early as May 2020. Davis Decl., at ¶4. Furthermore, Plaintiffs have never licensed or given Defendants the right to use any of the Plaintiffs' Marks. *Id.*, at ¶9.

Plaintiffs also satisfy the third factor applying the Seventh Circuit's seven factors to determine whether there isa likelihood of confusion, namely: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461 (citation omitted). Although no one factor is decisive, the similarity of the marks, the intentof the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiffs plainly satisfy the likelihood of confusion test as follows:

- First and Second, the Defendants are selling low-quality counterfeit versions of products that are similar to Plaintiffs' products and use counterfeit marks identical to the Marks.

- Third, the Plaintiffs also satisfy the third factor because "there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 681 (7th Cir. 2001). The Defendants' websites and webstores advertise and sell counterfeit Plaintiff products online, just as Plaintiff advertises and sells its genuine products online.

- Fourth, the degree of consumer care, consumers purchasing Plaintiff products are a diverse, unspecialized group. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union*, 142 F. Supp. 2d at 1043 (citation omitted). Plaintiffs' consumers are likely to be and have been confused by the use of the identical marks, so this factor favors the Plaintiff.

- Fifth, the Marks are unique and arbitrary denoting the strength of the Marks.

- Sixth, Plaintiffs do not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion with Plaintiffs' products that use the same Mark. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir. 1995). Because the goods as advertised look identical, consumers will be confused and think that Defendants' products are genuine Plaintiff products or are sponsored or endorsed by the Plaintiffs. This factor weighs in favor of Plaintiffs.

- Seventh and finally, Defendants are intentionally using the Marks to confuse and deceive the consuming public into thinking that Defendants' counterfeit products are manufactured by or emanate from Plaintiffs.

In sum, it is clear that each of the seven "likelihood of confusion" factors weighs heavily in favor of the Plaintiffs, and, therefore, Plaintiffs have proven they have a reasonable likelihood of success on the merits for their trademark infringement and counterfeiting claim.

### 2. Plaintiff Teddy Stratford is Likely to Succeed on their Copyright Infringement Claim.

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) the infringer's unauthorized copy of protected elements of the copyrighted material. *Frerck v. John Wiley & Sons, Inc.*, 850 F.Supp.2d 889, 892 (N.D.Ill. 2012).

In the instant case, Plaintiff Teddy Stratford has clearly shown these elements. *See* Jones Decl. at ¶¶6-8; and Davis Decl. at ¶¶12-16. Defendants falsely advertise the sale of authentic Products through the Infringing webstores, often by stealing and copying Plaintiffs' copyrighted

images and photographs of Plaintiff's genuine products in violation of the Plaintiff's copyrights. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Products of the Plaintiff; they do not.

### 3. *Plaintiff Teddy Stratford is Likely to Succeed on its Patent Infringement, as well as on all Other Requirements for Injunctive Relief in Patent Contexts.*

Again, courts within this jurisdiction have held that the standards for issuance of a TRO are the same as those for a preliminary injunction. *Peng v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2021:cv-1344 , 2021 WL 4169564 (N.D.Ill. 2021) ("*Peng*") is recent case from this district involving facts with substantial similarities. The *Peng* plaintiff sued a group of defendants for internet sales of infringing products on platforms such as Amazon by infringing parties who were initially difficult to identify and who were ostensibly residing outside the United States. *Peng*, 2021 WL 4169564, *4.

The *Peng* Court set forth the basic analysis for a case such as this:

"In the case of patent infringement, a court's determination of whether to issue a preliminary injunction involves a two-step inquiry, with a threshold phase and a balancing phase. *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). In the threshold phase, the party seeking a preliminary injunction must demonstrate: '(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied.'" *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the movant successfully makes the required threshold showing, the Court proceeds to the "balancing phase," where it considers: " '(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties.' " *Id*. at 545 (quoting *Abbott Labs.*, 971 F.2d at 11). The Court "employs a sliding scale approach" to the balancing analysis; "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations marks and citation omitted)." *Peng*, 2021 WL 4169564, *2.

a. Likelihood of Success – Patent Infringement

"To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the

alleged infringer's challenges to patent validity and enforceability." *Peng*, 2021 WL 4169564, \*3, *citing Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). "Design patents enjoy a 'presumption of validity.'" *Id., citing Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). "A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Id., quoting Ethicon Endo-Surgery*, 796 F.3d at 1335 (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)).

Plaintiff Teddy Stratford holds valid and enforceable patents while Defendants are marketing ostensibly identical products, and thus, Plaintiff is *more* than likely to succeed on the merits.

b. Irreparable Harm to Plaintiff and Inadequacy of Legal Remedies

"[I]n evaluating a request for an injunction after patent infringement had been established, the district court should ... appl[y] 'the traditional four-factor framework that governs the award of injunctive relief.'" *Peng,* WL 4169564, \*2, *quoting eBay, Inc. v. MercExchange*, LLLC, 547 U.S. 388, 394 (2006). Where a plaintiff patentee shows a likelihood of consumer confusion or shows that a monetary judgment will be likely uncollectable due to the geographic location of the defendant – *all of which has been established in the instant case* – then issuance of an injunction is appropriate.

Courts within this district have held that the sale of the allegedly infringing products on the same internet markets as plaintiff has and will continue to irreparably harm Plaintiff Teddy Stratford. "The confusion caused by knock-off products in the stream of commerce damages the value of the brand and cannot be compensated by money alone." *Peng*, 2021 WL 4169564, \*6. "As the Seventh Circuit stressed in *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013), it is difficult to quantify the effect of consumer confusion on a brand— and that is all the more so on the limited record available at the preliminary injunction stage." *Id.*

In general, the public interest "favor[s] the enforcement of patent rights to promote the encouragement of investment-based risk." *Apple Inc. v. Samsung Electronics Co.*, Ltd., 735 F.3d 1352, 1371 (Fed. Cir. 2013) (internal citation and quotation marks omitted). However, the Court must also focus on "whether a critical public interest would be injured by the grant of injunctive relief." *Metalcraft of Mayville*, 848 F.3d at 1369.

In *Peng*, the Court found that there was *no critical public interest* that would have been injured by enjoining the defendants from selling the allegedly infringing products during the pendency of the lawsuit, because consumers would have been able to buy similar but non-infringing products from non-infringing sellers. *Peng*, 2021 WL 4169564 at 6. Thus, the *Peng* Court concluded that the balance of harms favored issuance of a preliminary injunction. *Id.*

### 4. *Plaintiff Teddy Stratford is Likely to Succeed on its False Designation of Origin Claim.*

A plaintiff bringing a false designation of origin claim under 15 U.S.C. §1125(a) must prove five elements to "prevail on its claim": (1) defendant misbranded plaintiffs' goods; (2) the misbranding was "material"; (3) defendant caused plaintiff's goods to enter interstate commerce; (4) the misbranding caused a likelihood of confusion; and (5) plaintiff was injured. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. The Marks are registered, and Plaintiffs have established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants (*supra*), a likelihood of success on the merits for Plaintiffs' false designation of origin claim is also established.

### 5. *Plaintiff Teddy Stratford is Likely to Succeed on its Unfair Competition and Deceptive Trade Practices Claim.*

In Illinois, courts resolve unfair competition and deceptive trade practice claims "accordingto

11

the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id*. at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Because Plaintiff has established a likelihood of success on the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendants (supra), andthe standard is the same under Illinois law, Plaintiffs have established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### 6. *Plaintiff Davis is Likely to Succeed on Its Illinois Right to Publicity Act Claim.*

Plaintiff Bryan Davis has stated as Count VI a claim under the Illinois Right to Publicity Act Claim, 765 ILCS §1075, et seq. Section 30(a) of the statute states:

> "Limitations regarding use of an individual's identity. (a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative." 765 ILCS §1075/30.

Thus, to prevail under this section, Plaintiff Davis must establish that (1) Bryan Davis is a person; (2) Bryan Davis is alive (there are different provisions for claims following the end of a person's life); and (3) Defendants used Bryan Davis's identity for commercial purposes; and (4) without permission.

For its showing under Article XI of the Illinois Code of Civil Procedure, Plaintiff Davis restates and relies on the foregoing arguments in sections A(1)-A(3) pertaining to requirements for injunctive relief – temporary, preliminary and permanent. Further, there can be no doubt of the use of Bryan Davis's likeness, nor can there be any doubt it was used in commerce, for a commercial purpose on Defendants' websites and webstores.

Section 50 of the Illinois Right to Publicity Act states as follows:

"Injunctive relief. Upon a showing of cause as required by Article XI of the Code of Civil Procedure for the issuance of injunctive relief, the court may issue such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act." 765 ILCS §1075/50.

For the foregoing reasons, Plaintiff Bryan Davis is entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction and permanent injunction.

**B.** **There Is No Adequate Remedy at Law and Plaintiffs are Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir.2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages" *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

Defendants' unauthorized use of the Marks has and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' reputation, loss of exclusivity, and loss of future sales. Davis Decl., at ¶¶13-14. The extent of the harm to Plaintiffs' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d

1134, 1140 (7th Cir. 1994) ("[S]howing should be granted preliminary relief."). Plaintiffs in this case should be granted preliminary relief.

### C.     The Balancing Of Harms Tips Heavily in Plaintiffs' Favor.

As noted above, if the Court is satisfied that Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiffs will suffer if relief is denied. *TY, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships betweenthe parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v.Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits oradvantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor adefendant whose injury results from the knowing infringement of the Plaintiffs' trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C.1996).

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of counterfeit Plaintiff products using the Marks and Davis's likeness. Thus, the balance of equities tips decisively in Plaintiffs' favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### D.     Issuance of an Injunction is in the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark, patent and copyright law. The public is currently under the false impression that defendants are operating their Webstores with

Plaintiffs' approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citation omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv- 00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is patent, and the injunctive relief which Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused or defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' continuing unauthorized use of the Marks is enjoined, the public will continue to be confused and misled by Defendants' conduct. For all of these reasons, it is respectfully submitted that granting Plaintiffs' Motion for Entry of Temporary Restraining Order is in the public interest.

**E.    The Equitable Relief Sought is Appropriate Under the Circumstances.**

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark...." 15 U.S.C. §1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse

15

party can be heard in opposition. Finally, under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

Plaintiffs request an order requiring the Defendants to immediately cease all use of the Marks or substantially similar marks on or in connection with all Defendant websites and webstores. Such relief is necessary to stop the ongoing harm to the Marks and goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their illegal use of the Marks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiffs are currently unaware of both the true identities and locations of the Defendants, as well as other Defendants' websites and webstores used to distribute counterfeit products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (unpublished) (granting *ex parte* Temporary Restraining Order); *Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021) (unpublished) (same); *Cycling Sports Group, Inc. v. The Partnerships*, No. 19-cv-5471 (N.D. Ill. Aug. 27, 2019) (same); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d at 463 (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of Plaintiffs' Mark, including removing all references "from metatags, metanames, or any other keywords on his websites").

In this case, Defendants' primary method of driving consumer traffic to the Infringing

Webstores and Webstores and maximizing sales of the Counterfeit Products is through the unlawful use of theMarks and displaying stolen images. Through their unlawful actions, Defendants have infringed upon the Marks generating sales that have led to concomitant losses suffered by the Plaintiffs. Davis Decl., at ¶12. If immediate injunctive relief is granted, any inconvenience or confusion experienced by users trying to locate Plaintiffs' products will be minimized, a primarygoal of the Lanham Act. In balancing the harms to the parties, any likelihood of harm to Defendants is significantly outweighed by the likelihood of harm to Plaintiff if immediate injunctive relief is not issued.

> **F.     An Order Preventing the Fraudulent Transfer of Assets is Appropriate.**

Plaintiffs request an *ex parte* order restraining Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of counterfeit Plaintiff products is not impaired. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants are likely to disregard their responsibilities and fraudulently transferfinancial assets to overseas accounts before an order is issued. Specifically, upon information andbelief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Plaintiffs have shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. §1117, Plaintiff are entitled to an accounting and recovery of profits, damages, and costs from Defendants'infringing actions and sales of counterfeit Plaintiffs' products.

In *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992), the Ninth Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly stated that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to

freeze [defendant's] assets in order to ensure the availability of that final relief." *See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *CSC Holdings,Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the[defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate andmay remain in place pending final disposition of this case.")

Following *Reebok* and *Levi Strauss & Co.*, the Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D.Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarrollo, S.A. v. Allianz Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id*. (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

In addition, courts in this district and across the country regularly issue asset restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (unpublished) (granting Application for Temporary Restraining Order including the freezing of Defendants' financial accounts); *Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021) (unpublished) (same); *Cycling Sports Group, et al. v. Does 1-100*, No. 19-cv-5471 (N.D. Ill. Aug. 27, 2019)  (unpublished) (same).

Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets, and the Lanham Act provides for an accounting and recovery of profits, costs, and damages. Fed. R. Civ. P. 64-65; 15 U.S.C. §1117. Since Plaintiffs seek recovery of Defendants' profits, an order freezing the Defendants' assets is within the Court's authority and should be granted. *Lorillard*, 2005 WL 3115892 at *13. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to freeze assets of the Defendants. Fed. R. Civ. P. 65.

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

**G.    Plaintiff is Entitled to Expedited Discovery.**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Plaintiffs are being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit Plaintiff products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by,

among other things, excluding any identifiable information from Defendants' Webstores and Webstores. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order.

Plaintiffs respectfully request an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only that which is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65. Plaintiffs are not aware of any reasonthat Defendants or third parties cannot comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiffs' seizure and asset restraint Order will likely have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that the expedited discovery be granted.

### H. Service of Process by Email is Warranted in this Case.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs request an order allowing service of process by electronically sending the Complaint, this Order, and other relevant documents via Defendants' Webstores and Webstores registration email, any known or discovered e-mail related to the website or webstore listed in the Complaint. Plaintiffs submit that providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the

actionand afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because most of the Defendants: (1) have not provided names and physical addresses in the public contact information to their respective Webstores and Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which the Defendant may be apprised of the pendency of this action. Plaintiffs respectfully submitthat an order allowing service of process via e-mail in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendantsin this manner, Plaintiffs will almost certainly be left without the ability to pursue a remedy.

Despite not providing reliable physical contact information directly to consumers, the Defendants must generally utilize email so that they may communicate with consumers regarding issues related to the purchase and shipment of products. Moreover, it is necessary for merchants who operate entirely online to maintain contact with the Website and Webstore host to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process byany means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id*. at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id*.

Similarly, a number of Courts, including the Northern District of Illinois, have held that

alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id*. at 1018; *Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (unpublished); *Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021) (unpublished) (same); *Cycling Sports Group, et al. v. Does 1-100*, No. 19-cv-5471 (N.D. Ill. Aug. 27, 2019) (unpublished) (same); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); *Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances... service of process via electronic mail... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiffs submit that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id*. at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id*. Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id*. As such, this Court may allow Plaintiffs to serve the Defendants via email.

Additionally, Plaintiffs are unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of contact information on their Webstores and Webstores. Plaintiffs, however, have good cause to suspect that many of the Defendants are residents of China. The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g., In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. As such, Plaintiffs respectfully request this Court's permission to serve Defendants via email or electronic publication.

## I.    A Bond will Adequately Secure the Injunctive Relief.

The posting of security upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement and unfair

competition, Plaintiffs respectfully request that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *Peanuts Worldwide LLC v. The Partnerships listed on Schedule A*, No. 1:21-cv-05863 (N.D. Ill. Nov. 10, 2021) (unpublished) (granting Application for Temporary Restraining Order including the freezing of Defendants' financial accounts); *Cycling Sports Group Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A,"* No. 21-1982) (N.D. Ill. Apr. 26, 2021) (unpublished) (same); *Cycling Sports Group, et al. v. Does 1-100*, No. 19-cv-5471 (N.D. Ill. Aug. 27, 2019) (unpublished) (same); *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*,482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond).

## IV. CONCLUSION

Defendants' counterfeiting operations, trademark, and copyright infringements are irreparably harming Plaintiffs' business, their Marks and consumers. Without entry of the requested relief, Defendants' sale of the counterfeit products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit products have been manufactured byor emanate from Plaintiffs, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary to protect Plaintiffs' patent rights, trademark rights, copyrights, and to prevent further irreparable harm to Plaintiffs and the consuming public, and to preserve the *status quo*. In view of the foregoingand consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Plaintiffs intend to present a motionfor preliminary injunction.

Respectfully submitted,

/s/ Patrick M. Jones
Patrick M. Jones
Counsel to the Plaintiffs

**AEGIS Law**

Patrick M. Jones (IL #6271256)
John N. Julian (IL #6211254)
Willis Tower
233 South Wacker Drive, 44th Floor
Chicago, Illinois 60606
Tel: (312) 329-0010
Email: pjones@aegislaw.com
Email: jjulian@aegislaw.com