IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEDDY STRATFORD APPAREL LLC, and BRYAN DAVIS, <br><br> Plaintiffs, <br><br> vs. <br><br> THE ENTITIES listed on EXHIBIT 1, <br><br> Defendants. | CASE NO. 1:23-CV-10799 <br><br> JUDGE ANDREA R WOOD <br><br> MAGISTRATE GABRIEL A. FUENTES |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant No. 94 Social.Shop ("Defendant" or "Social.Shop") hereby opposes Plaintiffs Teddy Stratford Apparel LLC's and Bryan Davis's ("Plaintiffs") motion for preliminary injunction (Dkt. 26) as Plaintiffs fail to establish a reasonable likelihood of success on the merits and their irreparable harm.

Social.Shop's positions are in substantial alignment with other defendants who appeared in this case, especially concerning Plaintiffs' copyright, trademark, patent, and publicity claims. This alignment arises as a direct consequence of Plaintiffs' broad-brush and formulaic approach in the Complaint and their Motion for Preliminary Injunction. Specifically, Plaintiffs have not provided details of any specific registered copyrighted works, nor have they conducted a comparative analysis between these copyrighted works and the images in question. Furthermore, Plaintiffs' asserted trademark claim suffers from a lack of distinctiveness. In addition, Plaintiffs have not adequately compared the claims of the asserted patents with the features of the accused products. Regarding Plaintiffs' claims of infringement on publicity rights, they are based on the lower portion of an individual's face, which fails to distinctly identify any particular person and lacks any elements that could be associated with a recognizable individual. In sum, Plaintiffs do

not have a reasonable likelihood of success on the merits. *See, e.g.*, *LG Elecs. Inc. and LG Elecs. Alabama, Inc. v. The P'ships and Unincorporated Assocs. Identified in Schedule C*, No. 21-cv-02600 [Dkt. 37] (N.D. Ill. June 17, 2021) (dissolving TRO on emergency basis and ordering that Amazon.com "immediately unfreeze and relist on Amazon.com the Moving Defendants' Amazon storefront accounts previously frozen by order of this court").

The specific arguments supporting Social.Shop's position are detailed below, largely paralleling the reasoning laid out in the briefs of other Defendants, with a few distinct arguments in Section I.B.

I.     **ARGUMENT**

    A.     **Legal Standard**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In order to properly receive a preliminary injunction, Plaintiff must have demonstrated by a clear showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321-22 (7th Cir. 1984). The movant "bears the burden of persuasion with regard to each factor in the preliminary injunction relief analysis" and if it "fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied." *Smith v. Foster*, 2016 WL 2593957 (E.D. Wis. May 5, 2016).

    B.     **Arguments Specific Raised In This Brief**

While Defendant presents several arguments that are common to those of other

2

defendants, the arguments in this section are raised first time in this brief.

### 1. Plaintiffs' Registered Trademark "Zip Fit Shirt" Is Invalid

Plaintiffs' trademark "Zip Fit Shirt" is a collection of descriptive words. The Federal Circuit has long held that such a mark is subject to strict scrutiny. *See In re DDMB, Inc.*, 681 Fed.Appx. 919 (Fed. Cir. March 8, 2017) (holding that the mark at issue "Emporium Arcade Bar" is not a unitary mark).

In *In re DDMB, Inc.*, the Trademark Office ordered the trademark applicant to disclaim two words, "Arcade Bar," out of the three-word mark "Emporium Arcade Bar" for "providing video and amusement arcade services". *Id*. at 920. In addition, the Trademark Office found "the word EMPORIUM is descriptive for DDMB's services because it immediately conveys the information of a commercial establishment featuring a variety of beverages and video arcade games," and "'EMPORIUM' combined with ARCADE BAR does not form a unitary mark because the composite mark does not possess a 'distinct meaning of its own.'" *Id*. at 922. The Federal Circuit affirmed this decision. *Id*. at 923.

Similarly, here, Plaintiffs have disclaimed two words, "Zip" and "Shirt" out of the three-word mark "Zip Fit Shirt." Exhibit 5. The only remaining word, "Fit," just as the word "EMPORIUM" in *In re DDMB*, is pure descriptive for shirts, and cannot form a unitary mark. Thus, Plaintiffs' trademark assertion lacks merit.

### 2. Plaintiffs' Design Patent Is Invalid Over Its Own Sales

A patent claim is invalid as anticipated if "the claimed invention was patented, described in a printed publication, or **in public use, on sale**, or otherwise available to the public before the effective filing date of the claimed invention." 35 U. S. C. §102(a)(1) (emphasis added). Here, Plaintiffs' own evidence suggests that the claimed invention in the design patent was invalid because of its own sales one year before the effective filing date.

3

In Plaintiffs' now-cancelled trademark Registration No. 4217399[1], there was an explicit acknowledgment by Plaintiffs that their "Zip Fit Shirt" product had been in commerce as early as February 20, 2012. Exhibit 2 at 3. Specifically, the canceled trademark was filed pursuant to Section 1(a) of the Lanham Act, "actual use in commerce." Exhibit 2 at 1. To establish this "actual use," Plaintiff presented a specimen showcasing a tag below:

> THE BEST FITTED SHIRT ON THE PLANET.
>
> This authentic Teddy Stratford Zip Fit™ shirt features a zipper behind the placket to allow for a slimmer, cleaner fit without causing pulling around the buttons. Each shirt is hand made in New York City from the finest fabrics and materials in the world.
>
> www.teddystratford.com

Exhibit 2 at 4. This tag filed on February 20, 2021, unambiguously demonstrates that the "Zip Fit Shirt" was on sale since this date. This evidence, if properly disclosed by Plaintiffs to the USPTO, would prevent the design patent from being issued, as the design patent's effective filing date is much later, on May 19, 2015. Exhibit 4.

Therefore, Plaintiffs effectively obscured the existence of their own product that would invalidate their design patent application during the prosecution. Such an act of concealment constitutes an inequitable conduct which renders the patent both invalid and unenforceable. *See GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310 (Fed. Cir. 2020) (holding the patents-in-suit are unenforceable due to inequitable conduct by the inventors). Plaintiffs' assertion of

---

[1] The trademark was also "Zip Fit Shirt".

this Patent violates competition laws.

### 3. *Plaintiffs' Copyright Claim Lacks Valid Legal Basis*

Plaintiffs' decision to initiate a copyright infringement lawsuit against Defendant prior to securing a registered copyright starkly violates the clear mandate of 17 U.S.C. §411(a) as explained by the Supreme Court in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. __, 139 S.Ct. 881 (2019). The present case was initially filed on September 13, 2023. However, the copyright claimed by the Plaintiff was registered on September 22, 2023 (Exhibit 1) after the initiation of the lawsuit, indicating that at the time of filing, a valid copyright registration was not in place. Plaintiffs failed to correct this mistake even after the copyright was registered and asserted that "Plaintiffs do not believe that any amendment, other than adding the New Defendants, is necessary in this case." [Dkt. 18 at 3].

It is well settled that a valid copyright registration is required to initiate a copyright infringement lawsuit. *Fourth Estate*, 139 S.Ct. at 888-890. The Supreme Court, in its unanimous decision delivered by Justice Ginsburg, held that under 17 U.S.C. §411(a), a copyright infringement suit can only be instituted after the Copyright Office registers the copyright, not merely upon submission of an application for registration. *Id*. at 886 ("We hold . . . that registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright."). This Supreme Court decision unequivocally cemented the principle that under 17 U.S.C. §411(a), a copyright infringement suit can only commence following the formal registration of the copyright by the Copyright Office. In light of this precedent, Plaintiffs' initiation of the lawsuit without a pre-existing copyright registration contravenes the established legal standard and lacks merit. *Comp*. *Dkt*. 1 filed on September 13, 2023 and Exhibit 1 (showing "Registration Decision Date" as September 22, 2023). It is inappropriate to grant a preliminary injunction based on a complaint that lacks valid legal basis.

  **C.**  **Plaintiff cannot show a reasonable likelihood of success on the merits for their design patent infringement claim because the '457 Patent is vulnerable to being invalidated.**

Although a patent is presumed valid under federal law, "that presumption does not relieve the moving party in the preliminary injunction context from carrying its normal burden of establishing its reasonable likelihood of prevailing" on the merits. *Techtronic Indus. Co. v. Chervon Holdings, Ltd.*, 395 F. Supp. 2d 720, 729 (N.D. Ill. 2005). If the alleged infringer "raises a substantial question of invalidity, the preliminary injunction should not issue." *Neutral Tandem, Inc. v. Peerless Network, LLC*, 2010 WL 11537593 at *4 (N.D. Ill. Mar. 30, 2010). To meet this burden, the alleged infringer must only show that the patent is "vulnerable," which requires less proof than the clear and convincing showing necessary to establish invalidity itself. *Id*. If the alleged infringer shows that the patent is "vulnerable" the burden shifts back to the patentee "to show that the defense lacks substantial merit." *Id*.

Plaintiff has and will fail to meet the burden of proving it has a reasonable likelihood of success on the merits because there are substantial questions regarding the validity of the '457 Patents. "Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The alleged infringer must identify at least some persuasive evidence of invalidity at this early stage to overcome the presumption of validity." *Abbott Lab'ys v. Sandoz, Inc.,* 500 F. Supp. 2d 807, *817 (N.D. Ill. 2007)*; *Techtronic* (at a preliminary injunction stage the district court does not resolve the validity question, but "rather assesses the persuasiveness of the challenger's evidence").

A patent claim is invalid as anticipated if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U. S. C. §102(a)(1).

Here, the invention claimed in the '457 Patent is anticipated because products that

embody the design claimed in the '457 Patent were commercially available more than one year before the '457 Patent's effective filing date. Other defendants have filed two (2) references which are within the scope of the '457 Patent were subject to a commercial offer for sale before the '457 Patent's effective filing date of May 19, 2015. *See* Dkts. 42-1, 42-2 (both showing a "Date First Available" of November 29, 2013). In order to trigger the on-sale bar, the invention for sale must "be something within the scope of the claim." *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999). The '457 Patent contains very little ornamentation, and essentially just claims the button-down portion of a shirt with a zipper underneath the buttons. As shown in Dkts. 42-1, 42-2, the two references disclose shirts with an identical, or virtually identical button-down portion and a zipper underneath the buttons. Accordingly, since the references in Dkts. 42-1, 42-2 are "within the scope of the claim" of the '457 Patent and were subject to a commercial offer for sale on November 29, 2013, more than one year before the '457 Patent's effective filing date, the '457 Patent is invalid, or at least vulnerable to being invalidated. *Scaltech Inc.*, 178 F.3d at 1383.

> **D. Plaintiff cannot show a likelihood of success on the merits for their utility patent claim because Defendant's alleged infringement of the '285 Patent is not supported by the evidence.**

Plaintiff has an evidentiary burden, and a preliminary injunction should not be issued except on clear showing that the preliminary injunction is necessary, and that the elements therefor satisfied. *See Mazurek* (Temporary restraining orders and preliminary injunctions "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). Ultimately, Plaintiff must make a "strong showing" which "normally includes a demonstration of how [Plaintiff] proposes to prove the key elements of its case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

Plaintiffs conclusively allege that "Defendants are marketing ostensibly identical

7

products, and thus, Plaintiff is more than likely to succeed on the merits" of their utility patent claim. [Dkt. 11 at 10]. The asserted '285 Patent is for a "SHIRT COLLAR LOCKING SYSTEM AND APPARATUS" and claims a shirt collar locking system for locking a shirt collar in an upright position and a method of manufacturing such a shirt. Notably, the claimed shirt collar locking system requires a stick-shaped collar stay and pockets to receive the collar stay in the shirt collar, however the evidence submitted by Plaintiff does not show any of these features. Plaintiff has not provided any claim chart or evidence whatsoever that Defendants' products infringe the '285 Patent, accordingly, without any evidence of infringement, Plaintiff has not established, even in summary fashion, a likelihood of success or a finding of irreparable harm regarding Defendants and the preliminary injunction should be denied. *See*, *Stanislawski v. Jordan*, 337 F. Supp. 2d 1103, 1119 (E.D. Wis. 2004) (finding insufficient evidence to warrant preliminary injunctive relief where Plaintiff made conclusory allegations and "failed to provide any substantive evidence that might support a claim of violation of the Lanham Act."); *Praefke Auto Elec. & Battery Co. v. Tecumseh Prod. Co.*, 255 F.3d 460, 461 (7th Cir. 2001) ("There is therefore no showing of irreparable harm, [] and on this ground alone the preliminary injunction should have been denied.").

      **E.    Plaintiff cannot show a likelihood of success on the merits for their trademark infringement claims because Defendant's "use" of the Mark is a fair use.**

Plaintiff conclusive argues that Defendants use counterfeit marks identical to the asserted trademarks. [Dkt. 11 at 7]. The Complaint only asserts the trademark "Zip Fit Shirt" against Defendant. However, Defendant's use of these three words was simply descriptive of their products and is covered under fair use. *Packman v. Chi Tribune Co*., 267 F.3d 628, 639 (7th Cir. 2001) (observing that when no likelihood of consumer confusion exists, the defendants are often found to be fair use). Statutory fair use serves as a complete defense to a claim for trademark

8

infringement if the Defendant can show: (i) it did not use the mark as a trademark; (ii) the use is descriptive of its goods; and (iii) it used the mark fairly and in good faith. *Packman*, 267 F.3d at 639.

### 1. Defendant did not use "Zip Fit Shirt" as a trademark.

Words or phrases are "used" as trademarks "when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 596 (7th Cir. 2019). To decide whether a term is being used as a trademark, the Seventh Circuit assesses multiple factors, including: (1) whether the phrase is used with a company's "house mark"; (2) how prominently it is displayed compared to the house mark; (3) whether the phrase is used on all of its product packaging, or only in certain advertisements; and (4) whether the slogan is "catchy" - that is, whether it is meant to stick in a customer's head and create an association with the source. *Id*. at 598.

Evaluating these factors, it is clear that Defendant used "Zip Shirt" or "Zip Fit Shirt" to simply describe basic characteristics of their products rather than to signify the source of them. Defendants do not use the term "Zip Fit Shirt" in the title of their product, but rather only use the term "Stretch Zip Shirt" in the title. Exhibit 3. Moreover, "Zip Shirt" is not displayed any larger or smaller than the other words in the product title. *See*, *Milo Enterprises, Inc. v. Bird-X, Inc.*, 2022 WL 874625 at *6 (N.D. Ill. Mar. 24, 2022) (finding that a phrase that was not displayed any larger or smaller than other words in the product name or description suggested that the phrase was not being used as a trademark). Defendants do not use the term "Zip Fit Shirt" in the title or the product description, where the source-identifier is normally located, and the term "Zip Fit Shirt" does not appear in any of the Defendants' listings until near the bottom of the product pages. *See, Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1258 (S.D. Cal. 2008)

(holding that defendant did not used terms as a trademark in part because they did not put allegedly infringing mark on its merchandise where one would expect to find the source-identifiers of a product).

Furthermore, nothing about Defendant's use of "Zip Shirt" or "Zip Fit Shirt" stands out as catchy, playful, rhyming, or rhetorical in a way that is intended to create "a memorable slogan that is uniquely associated with [Plaintiff's] product." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992). Accordingly, the first element weighs in favor of finding fair use.

### 2. *Defendants' use of "Zip Fit Shirt" was descriptive of their goods.*

Phrases are "descriptive" within the meaning of the fair use exception where the term "names a characteristic of a product or service." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 724 (7th Cir. 2015). Descriptive use of a term is not a trademark violation; "[t]his rule ensures that competitors can market their products by describing them. . . . [and] reflects that descriptors are a poor means to distinguish among competing products." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (citations omitted). The test of descriptiveness is "one of consumer perception - how is [the term] perceived by the average prospective consumer?" *Sands, Taylor & Wood Co.*, 978 F.2d at 953 (quotation and emphasis omitted). Here, an average customer would determine that "Zip Shirt" and "Zip Fit Shirt" is just describing the Defendants' products, which literally include a zipper underneath the front buttons to close and provide the fit of the shirt around a user's torso. Accordingly, the second element weighs in favor of finding fair use.

### 3. *Defendants used the term "Zip Fit Shirt" fairly and in good faith.*

The good faith element of the fair use defense "look[s] to [the alleged infringer's] subjective purpose in using a slogan." *SportFuel*, 932 F.3d at 600. Defendant's good faith may be judged "only by inquiry into its subjective purpose in using" the phrase. *M. B. H. Enters.,*

10

*Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980). "[T]he standard for good faith for fair use . . . asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274–75 (11th Cir.2006) (citing cases from five other circuits, including the Seventh Circuit). Defendants only used the term "Zip Shirt" and "Zip Fir Shirt" to describe their products and did not use these terms as source-identifiers and did not intend to trade on the good-will of Plaintiff or create confusion as to the source of the goods. *See, Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1076 (C.D. Cal. 2012) ("Because Defendants are not using the mark as a source-identifier . . . they did not use the mark intending to capitalize on Plaintiff's good will."). Accordingly, all three favors weigh in favor of finding fair use, and Plaintiffs are highly unlikely to succeed on the merits of their trademark infringement claims against Defendants, and there is no colorable argument that the extraordinary relief of a preliminary injunction is warranted. *Weifang Tengyi Jewelry Trading Co., Ltd., v. Intuii LLC, Jens Sorensen, et al.*, Case No. 18-cv-04651, Dkt. 44 (N.D. Ill. August 17, 2018) (J. Feinerman) (granting defendants motion to lift the TRO arguing that if Plaintiff cannot demonstrate a likelihood of success on the merits the balance of harms weighs in favor of the defendant).

      **F.**    **Plaintiff cannot show a likelihood of success on their copyright infringement claim because the asserted copyright lacks the required degree of creativity.**

Plaintiff have not specified any particular copyrighted works in their claim. Neither the initial Complaint, the Temporary Restraining Order Motion, nor the Preliminary Injunction Motion identifies any asserted copyrighted images. Furthermore, there has been no comparison of the asserted copyrighted images with those used by Defendant. Consequently, Plaintiffs have not satisfied the requirements under *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007), which

mandates sufficient information in pleadings to adequately inform the defendant of the claims.

In addition, for a copyright to be valid, the underlying work must be original. To be sure, originality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way. *NTE, LLC v. Kenny Constr. Co.*, 2016 WL 1623290 at *4 (N.D. Ill. Apr. 25, 2016). In other words, "[t]he standard of originality is low, but it does exist." *Id*. (emphasis added). To be protected under copyright law, "a photograph ... must have an element of originality [or, in other words] some modicum of creativity…. [M]ere depictions" are not enough. *Rigsby v. Erie Ins. Co.*, 2015 WL 1186331 at *3 (W.D. Wis. Mar. 16, 2015), citing, *Conrad v. AM Community Credit Union*, 750 F.3d 634, 636-37 (7th Cir.2014). As discussed above, Plaintiffs failed to identify any particular asserted copyright works. In addition, even assuming Plaintiffs are asserting the pictures on their website, such pictures are very basic and simply depict a man in a neutral pose in front of a white background. Nowhere in Plaintiffs' motion do they identify anything original or creative about their photos. *Id*. (declining to find that photograph of a car accident qualified as an original work under copyright law where plaintiff did "not identify anything original or creative about the photographs."). Of course, the lighting and the camera angle was chosen, however "every photograph must be taken at some angle and in some light," and Plaintiff does "not identify any conscious choices they made regarding lighting or camera angles for the purposes of being original." *Id*. Accordingly, because Plaintiff's claimed copyright does not meet the standard required for originality, they have no likelihood of success on the merits for their copyright claim.

      **G.**     **Plaintiff cannot show a likelihood of success on their Illinois Right to Publicity Act Claim because Defendants do not use any features that would identify the person shown to an ordinary, reasonable viewer.**

The Illinois Right of Publicity Act ("IRPA") provides that a "person may not use an individual's identity for commercial purposes during the individual's lifetime without having

obtained previous written consent." 765 ILCS § 1075/30. The IRPA defines the key term of identity as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer." 765 ILCS § 1075/5. Here, Plaintiffs fail to provide any evidence that Defendant used Plaintiff Bryan Davis's "identity" as defined by the IRPA. Notably, Defendants photos do not include the man's face aside from his lower chin, and do not include enough distinctive features which would identify the subject as Bryan Davis to an "ordinary, reasonable viewer." *See, Oklahoma Natural Gas Co. v. Larue*, 1998 WL 568321 at *9-10 (10th Cir. 1998) (finding that photo of child and firefighter did not contain any features that would "readily identif[y]" either subject where the child's face was obscured and the majority of the firefighter's face was covered by a shadow and showed no distinguishing features other than that the firefighter was a white male with a moustache). The majority of the subject's face in Defendants' pictures is missing and his body is covered in clothing aside from his forearms that do not have any distinctive features. The only thing that Defendant's pictures convey is that the subject is a white male with some facial scruff, however Plaintiff has not pointed to any identifiable features that would be distinctive enough to identify him to an "ordinary, reasonable viewer." *Marchman v. Kovel-Fuller, LLC*, 2007 WL 9811116 at *2 (N.D. Ill. July 9, 2007) (dismissing claim under the Illinois Right of Publicity Act where "plaintiff ha[d] not pointed to any identifiable features that would be distinctive to [the subject]" where picture did not show subjects face and the only identifying features were that the subject was African-American football referee). Because the pictures at issue do not include enough features to identify the subject to an "ordinary, reasonable viewer," Plaintiff's IRPA claims are not likely to succeed.

      **H.**    **The asset restraint should be reduced to, at most, Defendant's profit from the accused products because the Court's power to impose pre-judgment asset freezes under Rule 65 is limited to an equitable accounting of such profits.**

The Supreme Court has held that district courts generally lack the authority "to issue a

preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages." *Grupo Mexicano de Dessarrolo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). This has been adopted in the Seventh Circuit as well. *See Micnerski v. Sheahan*, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief, where they are narrowly drawn and limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013).

Applying these principles, any prejudgment asset freeze should be limited to amounts that Plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. *See Deckers*, 2013 WL 12314399, at *2 ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more. . . In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."). The proposed injunction would freeze all funds in Defendant's accounts, regardless of source. However, Defendant has provided evidence showing that Plaintiffs have no equitable interest in particular restrained assets, as they are not the proceeds of the allegedly infringing activities. *Micnerski*, 2002 WL 31415753, at *1 ("federal district courts do not have

14

the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities. *Monster Energy Co. v. Chen Wensheng et al.*, 136 F. Supp. 3d 897, 910 (N.D. Ill 2015). Defendant has provided such documentary proof, including sales records of the accused products supported by the attached Declaration of Dan Ma.

- Defendant has a total revenue of $13,237.80 from the accused products, and a maximum equitable award of $2,037.6, which is Defendant's total profits from the sales of the accused products. Declaration of Dan Ma, ¶ 3.

There is no basis for including amounts in Defendant's accounts beyond the aforementioned profit amounts. *See, e.g., CSC*; *See also, Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (reducing asset freeze after defendants' documentary showing of profits earned from allegedly infringing goods). The amount of any asset restraint on Defendant's accounts should be reduced to, at most, the profits from the Defendant's sales of the accused products.

**II.     CONCLUSION**

Defendant request that the Court deny Plaintiff's Motion for Preliminary Injunction because Plaintiffs' claims are not likely to succeed, and the extraordinary relief provided by Rule 65 is unwarranted. At a minimum, the asset restraint is overbroad and should be limited to, at most, the profits from the Defendant's sales of the accused products.

Date: December 12, 2023            Respectfully submitted,

By: *s/ Ziyong Li*
Ziyong Li

Ziyong (Sean) Li (pro hac vice)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828

Louis Constantinou
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192
lconstantinou@beneschlaw.com

*Attorneys for SocialShop LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

/s/ Ziyong Li
Ziyong Li

*Attorney for Defendant SocialShop LLC*