IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN DAVIS, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23-cv-10799 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE ENTITIES LISTED ON EXHIBIT 1, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs' motion for a preliminary injunction [26] is denied based on the lack of a showing of personal jurisdiction as to the following Defendants: formlurgous.com, unfolbatle.com, generallyt.com, coherentm.com, embroideryn.com, converselyt.com, musicianp.com, validityi.com, and Fabio-Morello. This ruling does not resolve those Defendants pending motions to dismiss [70], [126], and the Court will set a date by separate order for the parties to provide their views regarding the propriety of jurisdictional discovery in connection with those motions. Fabio-Morello's motion to strike Plaintiffs' written summation following the preliminary-injunction hearing [146] is denied as moot. Fabio-Morello's motion for a protective order against expedited discovery [127] is granted consistent with the discussion during the April 2, 2024, status hearing [132]. A decision regarding Plaintiffs' motion for a preliminary injunction with respect to the remaining objecting Defendants will follow shortly. In the interim, the asset restraints concerning those Defendants will be modified in accordance with the chart at the conclusion of the accompanying Statement.

**STATEMENT**

**I.    Background**

Plaintiffs Bryan Davis and Teddy Stratford Apparel LLC has brought this action against multiple webstores allegedly based outside the United States (collectively, "Defendants"). They primarily assert federal claims for trademark, copyright, and patent (both design and utility) infringement in connection with the sale of products that purportedly resemble their proprietary "Zip Fit Shirts." (Compl., Dkt. No. 1.) Plaintiffs also assert claims under the Illinois Right to Publicity Act ("IRPA") 765 ILCS 1075/1 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1 *et seq.*

The Court issued a Temporary Restraining Order ("TRO") in November 2023. (Dkt. No. 21.) Broadly speaking, the TRO prohibits Defendants from infringing Plaintiffs' intellectual property rights and freezes Defendants' accounts and other assets until further order from this Court. (*Id.* ¶¶ 1–2, 5–8.) Shortly afterwards, Plaintiffs moved for a preliminary injunction. (Dkt. No. 26.) Although the precise claims against each Defendant vary, Plaintiffs broadly request a

preliminary injunction based on their trademark, copyright, and patent infringement claims as well as their IRPA claims. (Updated List of Defs., Dkt. No. 19.)[1]

Numerous Defendants appeared to oppose the preliminary injunction. Those that remain in the dispute can be divided into three groups:

1. The "Snappok Defendants," which consist of Snappok (No. 22), Snappok (No. 92), Foltrend (No. 53), Giftnii (No. 57), Jacksman (No. 69), Snappok Shop (No. 93), and Stilches (No. 95);[2]

2. The "B-E Defendants," which consist of bless-eternity.com (No. 8), brightmeteors.com (No. 14), bulk-supplement.com (No. 16), cleverwhalego.com (No. 18), coherentm.com (No. 134), converselyt.com (No. 19), easy-cheap-go.com (No. 24), elisastuff.com (No. 46), embroideryn.com (No. 47), fairytaleorama.com (No. 50), formlurgous.com (No. 54), funinyo.com (No. 144), generallyt.com (No. 56), musicianp.com (No. 75), tenderplanets.com (No. 97), unfolbatle.com (No. 106), validityi.com (No. 107), vigourgagem.com (No. 108), tonal-diamond.com (No. 101), institutionk.com (No. 66), and winterduet.com (No. 110); and

3. Fabio-Morello (No. 49).

These Defendants have filed briefs objecting to the preliminary injunction, raising arguments as to personal jurisdiction, the merits of the individual claims, and the propriety of the asset restraint that accompanied the TRO.

This Order focuses on the arguments regarding personal jurisdiction and the proper scope of the asset restraint—two threshold issues to the merits of the claims that received the most attention throughout the briefing. Personal jurisdiction is challenged by the following B-E Defendants, collectively referred to as "B-E Group One": formlurgous.com, unfolbatle.com, generallyt.com, coherentm.com, embroideryn.com, converselyt.com, musicianp.com, and validityi.com. The Court refers to the other B-E Defendants as "B-E Group Two." Fabio-Morello also objects to the preliminary injunction on personal-jurisdiction grounds. In fact, Fabio-Morello has moved to dismiss all claims against it for lack of personal jurisdiction (Fabio-Morello's Mot. to Dismiss, Dkt. No. 126), as have B-E Defendants (B-E Defs.' Mot. to Dismiss, Dkt. No. 70), though the latter have orally requested permission to file a revised motion. And all these Defendants, including B-E Group Two and Snappok Defendants, oppose the scope of the asset restraint in the TRO.

---

[1] Plaintiffs have filed a motion to amend their complaint to assert a trademark claim against Fabio-Morello, one of the Defendants addressed in this order. (Dkt. No. 182.) That motion does not affect the Court's analysis.

[2] The parties represent that the preliminary-injunction motion is moot, pending settlement discussions, as to Defendants Bootslooks (No. 11), Dresstyle (No. 23), Freesmily (No. 55), and Haulhot (No. 60).

2

In addition to the relief mentioned above, the TRO permitted Plaintiffs to issue expedited discovery to Defendants and certain third parties, including payment processors like PayPal. (TRO ¶ 4.) Plaintiffs pursued such discovery as to Snappok Defendants and B-E Defendants; one major overarching theme of their efforts was to corroborate the sales figures these Defendants had self-reported. (*See, e.g.*, Pls.' Update on Discovery Status at 3–6, Dkt. No. 130 (contending that the self-reported sales histories are untrustworthy)). Moreover, the Court authorized Plaintiffs to subpoena two third parties—PayPal and Shoplazza—regarding the sales history of Snappok Defendants and B-E Defendants. (Dkt. No. 144.) Plaintiffs recently submitted a report in which they summarize the findings from the discovery. (Pls.' Report on Discovery, Dkt. No. 158.) In short, although Plaintiffs maintain that Snappok Defendants and B-E Defendants could have omitted sales from their self-reported data, Plaintiffs effectively concede they have not yet uncovered evidence demonstrating that such sales actually exist. (*Id.* at 1, 4.)

Conversely, Plaintiffs did not serve any expedited discovery requests as to Fabio-Morello. During a March 2024 status hearing, Plaintiffs explained that they felt they already had enough information to support the motion for a preliminary injunction (as well as to oppose the motion to dismiss). (Fabio-Morello's Mot. to Dismiss, Ex. A ("Tr. of March 13, 2024, Status Hearing") at 10:13–11:9, Dkt. No. 126-1.) In a subsequent status hearing, the Court prohibited Plaintiffs from retroactively serving expedited discovery on Fabio-Morello due to their strategic decision to forego the opportunity at the appropriate juncture.

On April 16, 2024, the Court held a preliminary-injunction hearing for all Defendants remaining in the case that opposed the motion. (Dkt. No. 139.) Most of the relevant testimony for present purposes concerned the advertisements of the allegedly infringing items that certain Defendants had posted on social media. (Pls.' Exs. from Prelim. Inj. Hearing, Ex. A ("Online Advertisements"), Dkt. No. 142-1.) Indeed, Plaintiffs proffered an expert witness who testified about the mechanics of managing an advertisement campaign and opined that the large number of views for the advertisements in question suggests that Defendants were selling a significant quantity of the products. (Tr. of Prelim. Inj. Hearing at 159:20–174:12, Dkt. No. 154.)[3] Further, Plaintiffs introduced an email confirmation that they purchased and received three allegedly infringing shirts from Fabio-Morello. (Pls.' Exs. from Prelim. Inj. Hearing, Ex. C ("Email Confirmation") at 1–2, Dkt. No. 142-3.) The email confirmation is dated August 20, 2023, and it shows a shipping address in Missouri. (*Id.*)

Following the hearing, the parties agreed that the preliminary-injunction record regarding Fabio-Morello had closed. Fabio-Morello then submitted a written summation addressing the evidence from the hearing. Plaintiffs filed a summation too; however, Fabio-Morello moves to strike it, contending that Plaintiffs attempt untimely to introduce new evidence in the form of a listing and an advertisement for the allegedly infringing product. (Fabio-Morello's Mot. to Strike, Dkt. No. 146; *see also* Pls.' Summation as to Fabio-Morello, Ex. A at 3–5, Dkt. No. 145-1.) As for Snappok Defendants and B-E Defendants, the parties agreed to conduct additional discovery following the hearing. (Dkt. Nos. 140, 157.) That process has been completed, so the preliminary-

---

[3] B-E Defendants and Fabio-Morello objected to the witness's qualifications as an expert. The Court need not resolve that dispute in this Order.

injunction record is now closed for those Defendants too. (Dkt. No. 186.) And the parties have filed the corresponding summations. As such, the preliminary-injunction motion is now fully briefed.

## II. Discussion

"To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). The likelihood-of-success prong "is often decisive." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted). It requires the plaintiff at least to "make a strong showing that reveals how it proposes to prove its case." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (internal quotation marks omitted). Following the initial showing, courts "weigh[] the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine*, 8 F.4th at 539. This second stage of the test operates on a "sliding scale"; "the greater the movant's likelihood of success on the merits, the less the harms need be in its favor," and vice-versa. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). "The court also considers the public interest." *Id.*

The primary issue the Court addresses here concerns the scope of its personal jurisdiction over Defendants that claim to have made no sales in Illinois—the challenge raised by B-E Group One and Fabio-Morello. Afterwards, the Court determines whether and to what extent it should modify the asset restraint pending resolution of the preliminary-injunction motion as it pertains to Snappok Defendants and members of B-E Group Two.

### A. Personal Jurisdiction

The eight members of B-E Group One and Fabio-Morello all oppose the motion for a preliminary injunction on personal-jurisdiction grounds, contending that there is no evidence they made sales of the allegedly infringing items to Illinois. Before addressing the arguments as to these Defendants in particular, it is worth laying out foundational principles regarding personal jurisdiction in cases involving alleged infringement of intellectual properties over the Internet.

#### 1. Basic Principles in Online-Infringement Cases

The federal trademark, copyright, and patent statutes do not authorize nationwide service of process, so the personal-jurisdiction inquiry turns on the law of the forum state. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 800.[4] Under Illinois law, a court may exercise personal jurisdiction as "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c); *see also NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 n.15 (7th Cir. 2022) (observing the lack of "difference between the [Illinois] and federal standards"). The Court

---

[4] The parties focus their jurisdictional arguments on the federal-infringement claims, not the IRPA claims. The Court therefore does not consider the IRPA claims here.

thus addresses the scope of its personal jurisdiction consistent with the federal Due Process Clause. *NBA Props.*, 46 F.4th at 620–21, 620 n.15.

Personal jurisdiction may be general or specific. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757 (7th Cir. 2010). Here, Plaintiffs argue for this Court to exercise specific personal jurisdiction, which arises from litigation-related contacts the defendant created with the forum state. *Advanced Tactical*, 751 F.3d at 801. The contacts must indicate that the defendant purposefully availed itself of the forum state such that it "could have anticipated being haled into court" there. *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008).

In disputes involving online contacts, like this one, the Seventh Circuit has cautioned that "[h]aving an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Advanced Tactical*, 751 F.3d at 803. Similarly, that residents of the forum state may have seen an online advertisement does not alone create personal jurisdiction; in such a scenario, there must be evidence that the forum state in particular was somehow targeted. *See id.* (declining to find personal jurisdiction based on the defendant's email list that included residents from the forum state but noting that the analysis "may be different if there were evidence that a defendant in some way targeted residents of a specific state, perhaps through geographically-restricted online ads").

For that reason, most "[c]ourts in this District . . . agree that in infringement cases . . . the online retailer generally must have sold at least one product in Illinois for personal jurisdiction to exist here." *Roblox Corp. v. Bigfinz*, No. 23 C 5346, 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023). Such a rule comports with the Seventh Circuit's decision in *NBA Properties, Inc.*, which involved a defendant that allegedly sold infringing products through an Amazon page. 46 F.4th at 617–18. In finding personal jurisdiction, the Seventh Circuit emphasized that the defendant had not only offered the products for sale to Illinois residents but had "intentionally shipp[ed] an infringing product to [a] customer's designated Illinois address." *Id.* at 624. In fact, the Seventh Circuit at one point referred to the "act of selling the infringing product to Illinois" as "the basis for personal jurisdiction." *Id.* at 627; *see also Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (noting that "[s]ignificant caution is certainly appropriate when assessing a defendant's online contacts with a forum" but holding that evidence of the defendant's "767 sales . . . to Illinois residents provide[d] solid evidence that [it] ha[d] purposely exploited the Illinois market" (internal quotation marks omitted)). Courts in other circuits likewise largely have settled on the notion that merely offering a product for sale to residents of the forum state is not enough to create personal jurisdiction. *See, e.g., Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 220CV04310ODWKSX, 2022 WL 1568896, at *5 (C.D. Cal. May 18, 2022); *Spin Master Ltd. v. 158*, No. 18-CV-1774 (LJL), 2020 WL 5350541, at *2–3 (S.D.N.Y. Sept. 4, 2020).

A plaintiff cannot, however, create personal jurisdiction through purchases of the allegedly infringing product made only after litigation has been initiated. This sort of post-filing contact does not speak to whether the defendant should have **foreseen** litigation in the forum state. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019); *see also NBA Props., Inc.*, 46 F.4th at 625 (distinguishing *Matlin* because the defendant there "could not have foreseen that they would be haled into court in Illinois until after the case was filed"). Nor can personal jurisdiction rest on sales of products unrelated to the allegedly infringing items. True, specific personal jurisdiction does not require "a strict causal relationship between the defendant's in-state activity and the

litigation"; it is enough that the contacts "relate to" the litigation. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). But "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* The Seventh Circuit, for example, recently indicated that sale of batteries other than the model at issue in the lawsuit would not support personal jurisdiction. *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 863 (7th Cir. 2024). In infringement cases, the same logic applies to sales of products other than the ones alleged to be infringing.

Simply put, the question is whether the defendant had sufficient contacts with the forum state—generally, by making at least one sale of the allegedly infringing product there or through other evidence of targeting—at the time the suit was filed.

### 2. Application to Defendants

As noted above, this case is at the preliminary-injunction stage. Because a plaintiff cannot succeed on the merits of its claims if the Court does not have jurisdiction, the likelihood of showing personal jurisdiction is an appropriate consideration. *See, e.g.*, *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20-CV-3375, 2020 WL 3960451, at *4–5 (N.D. Ill. July 13, 2020) (assessing in the context of a TRO whether the plaintiff would be able to defeat an anticipated motion to dismiss for lack of personal jurisdiction); *see also Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 800 ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant."). Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of showing its existence. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

B-E Group One and Fabio-Morello have opposed the assertion of personal jurisdiction. The Court now considers whether Plaintiffs have overcome those challenges.

#### a) B-E Group One

For purposes of the preliminary injunction, Plaintiffs do not dispute that the eight members of B-E Group One made no sales of the allegedly infringing products to Illinois—at least, not where PayPal served as the payment processing service. (Pls.' Report on Discovery at 3–4.)[5] Plaintiffs nonetheless contend that this Court may exercise personal jurisdiction.

In large part, Plaintiffs contend that Defendants are misrepresenting the number of sales they made, including sales to Illinois, citing the possibility that they made sales to Illinois customers through a payment processor other than PayPal. Plaintiffs point to no evidence of such sales, however, a deficiency fatal to their position. Motions for preliminary injunctions are resolved by reference to "the evidence before the court." *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*, No. 1:22-CV-07119, 2023 WL 4865005, at *3 (N.D. Ill. July 31, 2023) (quoting *Darryl H. v.*

---

[5] The members of B-E Group One also submitted their own declarations in which they claim to have made zero sales to Illinois. (Zhang Decl. ¶ 17, Dkt. No. 168; Huang Decl. ¶ 17, Dkt. No. 169; Liu Decl. ¶ 17, Dkt. No. 170; Yue Lin Decl. ¶ 17, Dkt. No. 171; Zhang Lin Decl. ¶ 17, Dkt. No. 172; Tang Decl. ¶ 17, Dkt. No. 175.)

6

*Coler*, 801 F.2d 893, 898 (7th Cir. 1986)); *see also Bevis*, 85 F.4th at 1188 (explaining that a preliminary injunction requires the plaintiff to show more than "a mere possibility" of success). Because the available evidence supports B-E Group One's claims of zero sales to Illinois, the Court will not engage in speculation to find personal jurisdiction.

In the alternative, Plaintiffs suggest that B-E Group One affirmatively targeted Illinois residents through online advertising. Again, however, there is a dearth of evidence. During the preliminary-injunction hearing, Plaintiffs' proffered expert witness testified that advertising campaigns can both target and exclude specific geographic locations. (Tr. of Prelim. Inj. Hearing at 161:08–162:14.) Plaintiffs focus on the latter mechanism, suggesting that the B-E Group One Defendants could have removed Illinois from their advertisement campaigns to avoid personal jurisdiction here. But this standard would set the personal-jurisdiction bar too low. Premising personal jurisdiction on a failure to deselect Illinois—especially without any indication that the defendant intentionally deselected other states—would run counter to the notion that an online advertisement must be somehow "geographically[ ]restricted" to create the requisite minimum contacts, as the Seventh Circuit has suggested. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803. Here, Plaintiffs cite no evidence suggesting the B-E Group One Defendants ran anything other than nationwide campaigns. Thus, this argument for personal jurisdiction is unavailing too.

Finally, Plaintiffs contend there is personal jurisdiction on the grounds that the members of B-E Group One do not disclaim their ability to ship allegedly infringing products to Illinois. But just as merely displaying online advertisements does not support personal jurisdiction, the hypothetical ability to ship a product to Illinois does not on its own amount to purposeful availment. *See Hemi Grp. LLC*, 622 F.3d at 760 ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"). Likewise, when the allegedly infringing conduct is cast in tortious terms, "express aiming remains the crucial requirement"—a requirement Plaintiffs do not satisfy here. *In re Sheehan*, 48 F.4th 513, 525 (7th Cir. 2022) (internal quotation marks omitted).

Accordingly, Plaintiffs have not presented sufficient evidence to support this Court's exercise of personal jurisdiction over B-E Group One at the preliminary-injunction stage. That means they have not shown a likelihood of success on the merits. *Inventus Power, Inc.*, 2020 WL 3960451, at *4–5. Further, were the Court to reach the second stage of the preliminary-injunction test, the high burden of a continued asset restraint would not justify issuing the preliminary injunction without personal jurisdiction. *Grubhub Inc.*, 80 F.4th at 844. The motion for a preliminary injunction is therefore denied as to these Defendants: formlurgous.com, unfolbatle.com, generallyt.com, coherentm.com, embroideryn.com, converselyt.com, musicianp.com, and validityi.com.

The Court will not, however, grant the pending motion to dismiss B-E Group One (which B-E Defendants have asked to refile) based on a lack of personal jurisdiction. Instead, Plaintiffs and B-E Group One shall submit filings regarding their positions on whether it would be proper to proceed with further jurisdictional discovery regarding that motion.

### b) Fabio-Morello

Much of the discussion above regarding the B-E Group One Defendants applies equally to Fabio-Morello. That said, there is one notable difference with respect to the latter: Unlike B-E Group One, the record is silent on the scope of Fabio-Morello's sales. Plaintiffs take this to mean that discovery is needed to reveal whether Fabio-Morello made sales in Illinois. But Plaintiffs also admit they declined to pursue expedited discovery from Fabio-Morello when they had the chance. They cannot now, after the preliminary-injunction record has closed, cite the prospect of future discovery as indicative of their likelihood of success. *See Coler*, 801 F.2d at 898 (explaining that motions for preliminary injunctions are resolved based on the "evidence before the court").

What is more, the arguments Plaintiffs have advanced in favor of personal jurisdiction over Fabio-Morello are undermined by their faulty assumptions about how to demonstrate purposeful availment. Plaintiffs primarily, including during the preliminary-injunction hearing, cite their pre-litigation test purchase of an allegedly infringing item from Fabio-Morello. But the confirmation email they submitted into evidence shows a shipping address of Missouri. (Email Confirmation at 1–2.) Shipping a product to **Missouri** does not equate to shipping one to **Illinois**. *See Kinslow*, 538 F.3d at 691 (assessing the defendant's contacts with the forum state, not surrounding states). And the other evidence upon which Plaintiffs rely similarly does not show that Fabio-Morello targeted Illinois. As discussed above, screenshots of online advertisements, without more, do not suffice. *See Advanced Tactical*, 751 F.3d at 803. Nor can Plaintiff buttress their position by inferring from the number of views of advertisements that Fabio-Morello likely made sales to residents in Illinois. They offer inadequate evidence to support such a leap in logic; again, "a mere possibility of success" does not suffice. *See Bevis*, 85 F.4th at 1188.

Thus, as with B-E Group One, Plaintiffs have not sufficiently demonstrated for present purposes that this Court has personal jurisdiction over Fabio-Morello, and thus Plaintiffs have not shown a likelihood of success on the merits. *Inventus Power, Inc.*, 2020 WL 3960451, at *4–5. Balancing the harms would not justify granting the motion either—once more, in large part due to the burden Fabio-Morello would face under the asset restraint. *Grubhub Inc.*, 80 F.4th at 844. The motion for a preliminary injunction is therefore denied as to Fabio-Morello too.

As before, though, the Court is not presently ruling on Fabio-Morello's motion to dismiss for lack of personal jurisdiction. To that end, Plaintiffs and Fabio-Morello shall submit filings explaining their positions on the propriety of jurisdictional discovery for that motion.

### B. Asset Restraint

The Court next addresses whether (and if so, how) the Court should modify the asset restraint as to Snappok Defendants and B-E Group Two, which together comprise the Defendants that oppose the preliminary injunction on grounds other than personal jurisdiction. The decision as to whether these Defendants will be subject to a preliminary injunction is forthcoming. In the interim, the Court considers their arguments to modify the asset restraint, as counsel requested during the status hearing on May 23, 2024.

To start, the Court finds that it does have the authority to order an asset restraint in this case. Although such relief is improper to "establish a fund from which a later award of money

8

damages can be satisfied," courts may issue an asset restraint when the plaintiff pursues "equitable remedies," such as the "disgorgement of profits." *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) (citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 325–26 (1999)); *see also Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *9 (N.D. Cal. July 23, 2021) ("Given the deceitful and secretive nature of counterfeiting, this Court and others in this Circuit routinely find that dissipation of assets is likely and grant asset freezes in such cases, particularly when defendants are overseas where they can hide assets from a potential judgment."). Here, Plaintiffs pursue both statutory damages and disgorgement of Defendants' profits as alternative forms of relief for the alleged infringements. (Compl. at 16); *see also* 15 U.S.C. § 1117(a) (permitting the recovery of the defendant's profits in trademark cases); 17 U.S.C. § 504(a)(1) (same in copyright cases); 35 U.S.C. § 289 (same in design-patent cases).[6] The at-issue Defendants do not dispute that the Court may order an asset restraint with respect to the disgorgement of profits.

The asset restraint in the TRO currently prohibits Defendants from "transferring or disposing of any money" or "other assets until further ordered by this Court." (TRO ¶ 5.) It also compels various third parties to block any such transfers. (*Id.* ¶¶ 6–8.) Snappok Defendants and B-E Group Two contend that this relief is overbroad. "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21 C 3581, 2021 WL 4459472, at *4 (N.D. Ill. Sept. 24, 2021) (internal quotation marks omitted). On that front, Snappok Defendants and the members of B-E Group Two have provided Plaintiffs with relatively extensive discovery regarding the scope of their allegedly infringing sales in addition to the third-party discovery Plaintiffs have obtained. (*See generally* Pls.' Report on Discovery.)

Snappok Defendants and B-E Group Two (all allegedly based outside of the United States) argue that the asset restraint should only account for sales made to customers in the United States because any other sales fall outside the scope of the claims. Indeed, the Supreme Court has held that the Lanham Act does not have extraterritorial effect; it explained "that the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic applications of these provisions." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023) (quoting 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)); *cf. Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1172 (10th Cir. 2024) (holding on remand from the Supreme Court that if the defendant's "foreign sales arose from domestic infringing conduct, then those profits represent the fruits of a domestic injury for which [the plaintiff] may seek disgorgement" but emphasizing that the plaintiff "bears the burden of proving the connection between" the two). The caselaw generally supports the same conclusion as to copyright law. *E.g.*, *United States v. Vaulin*, No. 16 CR 438-1, 2017 WL 3334861, at *6 (N.D. Ill. Aug. 4, 2017). And it is "axiomatic that U.S. patent

---

[6] Claims for utility-patent infringement, on the other hand, generally do not permit such equitable relief and therefore do not justify asset restraints. *ABC Prod. v. Individuals, Corps., Ltd. Liab. Cos., P'Ships, & Unincorporated Ass'ns Identified on Attached Schedule A*, No. 23 C 4131, 2024 WL 1549784, at *6 (N.D. Ill. Jan. 9, 2024) (citing 35 U.S.C. § 284). Plaintiffs do not argue that IRPA authorizes asset restraints either.

law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).[7]

Plaintiffs have not meaningfully addressed whether their claims have international reach. *See, e.g.*, *Molina v. Latronico*, No. 18-CV-6632, 2024 WL 1376500, at *14 n.6 (N.D. Ill. Mar. 31, 2024) (deeming an argument waived when the litigant did "not develop or support" it). The Court will therefore limit the asset restraint for Snappok Defendants and B-E Group Two to their sales to United States customers.

Next, these Defendants contend that the asset restraint should be based on their profits, not their revenues, from the at-issue sales. The Court agrees that the scope of an asset restraint premised upon a request to disgorge profits should bear some resemblance to the actual profits. *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *5 (S.D.N.Y. Oct. 24, 2012). But that does not mean the restraint must align exactly with the amount the defendants claim as their profits at the preliminary-injunction stage.

Plaintiffs posit that further discovery might reveal discrepancies in the sales numbers Defendants have reported. To their point, the numbers reported by certain Defendants near the beginning of this litigation have changed dramatically following the discovery for the preliminary injunction. (*Compare* Huicong Decl. ¶¶ 1, 4, Dkt. No. 72 at 12–14 (initially claiming a total revenue of $806.27 in domestic sales of allegedly infringing products on behalf of two members of B-E Group Two)*, with* Guo Decl. ¶¶ 1, 17, Dkt. No. 176 (now claiming that the same figure for the same Defendants is $15,341.46)); *cf. Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-CV-3471, 2020 WL 8260381, at *3 (N.D. Ill. July 20, 2020) (declining to modify an asset restraint in part because the defendants provided "no accounting of profit margins beyond a guesstimate"). More discovery might reveal more profits. Further, the trademark claims provide a separate reason to issue an asset restraint broader than the claimed profits—that statute allows a court to increase the amount of recovery based on a defendant's profits if it deems those profits "inadequate" to compensate the plaintiff. 15 U.S.C. § 1117(a). In short, the amount of profits Snappok Defendants and B-E Group Two claim now does not represent the ceiling of equitable relief Plaintiffs might ultimately recover.

Instead, the Court finds that limiting the asset restraint to revenue from sales of allegedly infringing items to customers in the United States strikes the proper balance between the competing interests here—namely, Plaintiffs' interest in securing the relief to which they are entitled if they prevail and Defendants' interest in accessing their funds to facilitate their businesses (*e.g.*, Jiang Decl. ¶¶ 35–36, Dkt. No. 173). *See Johnson & Johnson*, 2020 WL 8260381, at *4 (considering the "balancing [of] the equities" when deciding whether to modify an asset restraint).

---

[7] As for the IRPA claims, "a statute is without extraterritorial effect [under Illinois law] unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (internal quotation marks omitted). Plaintiffs point to no language in IRPA that would justify applying it to international conduct.

To reach those amounts, the Court relies on the "evidence before" it, which consists of the figures Snappok Defendants and B-E Group Two submitted with their written summations. *Coler*, 801 F.2d at 898. As already discussed in the context of personal jurisdiction, Plaintiffs do not contest for present purposes that B-E Group Two's self-reported sales numbers reflect the total amount of sales they made via PayPal. (Pls.' Report on Discovery at 4.) Although Plaintiffs speculate that those Defendants might have omitted sales made through other processing platforms, they lack evidentiary support for such a proposition. (*Id.* at 3–4.) Plaintiffs must also accept at this stage the self-reported figures for Snappok Defendants; as Plaintiffs admit, they have been unable to procure helpful discovery from third parties. (*Id.* at 1, 4.) Ongoing credibility challenges do not warrant delaying relief, especially given the ample opportunity Plaintiffs had to engage in discovery regarding Defendants' sales. Rather, at this stage in the proceedings, and absent countervailing evidence, the most recent figures these Defendants have reported guide the modification of the restraint.[8]

Accordingly, the asset restraints for Snappok Defendants and the members of B-E Group Two will be modified as reflected in the following chart:

| Defendant (No.) | Modified Asset Restraint | Source |
|---|---|---|
| Foltrend (No. 53) | $708.74 | Dkt. No. 165-1 |
| Giftnii (No. 57) | $1,686.57 | Dkt. No. 165-2 |
| Jacksman (No. 69) | $41.98 | Dkt. No. 165-3 |
| Snappok (No. 22)<br>Snappok (No. 92)<br>Snappok Shop (No. 93) | $103,862.60 | Dkt. No. 165-4 |
| Stilches (No. 95) | $6,016.63 | Dkt. No. 165-5 |
| bulk-supplement.com (No. 16)<br>cleverwhalego.com (No. 18)<br>easy-cheap-go.com (No. 24) | $156,158.09 | Dkt. No. 179 |
| bless-eternity.com (No. 8) | $9,470.96 | Dkt. No. 177 |
| fairytaleorama.com (No. 50)<br>winterduet.com (No. 110)<br>tonal-diamond.com (No. 101) | $10,520.21 | Dkt. No. 178 |
| elisastuff.com (No. 46)<br>funinyo.com (No. 144) | $15,341.46 | Dkt. No. 176 |
| brightmeteors.com (No. 14)<br>tenderplanets.com (No. 97)<br>vigourgagem.com (No. 108) | $16,338.40 | Dkt. No. 174 |
| institutionk.com (No. 66) | $12,795.84 | Dkt. No. 173 |

---

[8] The Court understands the filings for Snappok Defendants (Dkt. Nos. 165-1–165-5) to refer to revenue, not profit. If that is incorrect, Snappok Defendants must submit filings with their revenue figures.

### III. Conclusion

For the reasons stated above, Plaintiffs' motion for a preliminary injunction (Dkt. No. 26) is denied as to the eight members of B-E Group One (formlurgous.com, unfolbatle.com, generallyt.com, coherentm.com, embroideryn.com, converselyt.com, musicianp.com, and validityi.com) as well as Fabio-Morello. Plaintiffs and those Defendants will have the opportunity to set forth their views regarding the propriety of jurisdictional discovery in connection with Defendants' pending motions to dismiss (Dkt. Nos. 70, 126). Fabio-Morello's motion to strike Plaintiffs' written summation (Dkt. No. 146) is denied as moot because, even considering the contested evidence, Plaintiffs have not sufficiently shown personal jurisdiction. And the Court previously granted Fabio-Morello's motion for a protective order against expedited discovery (Dkt. No. 127). Finally, the asset restraint as to the other Defendants opposing the preliminary injunction—the Snappok Defendants and the members of B-E Group Two—will be modified in accordance with the above chart, which accounts for the revenue derived from sales of allegedly infringing items to customers in the United States.

Dated: June 21, 2024

_____
Andrea R. Wood
United States District Judge