**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| BRYAN DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 23-cv-10799 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE ENTITIES LISTED | ) | |
| ON EXHIBIT 1, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Teddy Stratford Apparel LLC ("Teddy Stratford") and Bryan Davis, Teddy Stratford's President, invented unique, high-end "Zip Fit Shirts." They now accuse dozens of foreign-based companies of infringing their registered trademarks by selling counterfeit versions of Plaintiffs' sartorial creation. Plaintiffs raise federal trademark and false designation of origin claims, as well as state-law claims for deceptive trade practices, violations of Davis's right of publicity, and civil conspiracy. One subset of Defendants in this case, Bless-Eternity Group ("B-E Group") Defendants, has moved to dismiss all claims against them. (Dkt. No. 249.) Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), B-E Group Defendants move to dismiss the claims against them for lack of personal jurisdiction (for those B-E Group Defendants without sales in Illinois) and for failure to state a claim (for all B-E Group Defendants). For the reasons that follow, the motion to dismiss is granted for those B-E Group Defendants without Illinois sales of the allegedly infringing products and denied as to all other B-E Group Defendants.

**BACKGROUND**

The following summarizes the allegations in the Amended Complaint.[1]

As alleged, Teddy Stratford's core product, its "Zip Fit Shirts," are protected by patents, copyrights, and trademarks registered with the United States Patent and Trademark Office ("USPTO") and the United States Copyright Office. (Am. Compl. ¶ 1, Dkt. No. 244.) Teddy Stratford sells its unique shirts worldwide, including within this District, using the trademarks "Teddy Stratford" and "Zip Fit Shirt" (collectively, "Teddy Stratford Marks"). (*Id.* ¶ 11.) And its website is the exclusive channel through which someone can purchase a genuine Teddy Stratford product. (*Id.* ¶¶ 12, 19.)

Davis, the President of Teddy Stratford, has also served as a spokesmodel for the brand. (*Id.* ¶ 13.) In that role, he has featured in still images and online videos created and owned by Teddy Stratford. (*Id.*) The promotional videos feature Davis wearing the Zip Fit Shirt and presenting its various features. (*Id.*) These images and videos, featuring Davis and the Teddy Stratford Marks, have been widely promoted in the United States and globally through social media platforms like Facebook, Instagram, YouTube, and TikTok. (*Id.* ¶ 17.)

In or around June 2023, Davis discovered that dozens of China-based companies were representing themselves as being Teddy Stratford online to sell low-quality, counterfeit versions of the Zip Fit Shirts to consumers. (*Id.* ¶ 14.) To do so, these companies, including Defendants here, would simply cut and paste Teddy Stratford's promotional images and videos into their own social media advertisements and websites. (*Id.* ¶¶ 14, 17, 25.) Defendants' online

---

[1] For present purposes, the Court merely summarizes the factual allegations of the Amended Complaint but, of course, does not vouch for their accuracy.

advertisements used exact copies of images and videos of Davis—including his face, voice, and words, and his use of the Teddy Stratford Marks—to sell counterfeit Zip Fit Shirts. (*Id.* ¶ 17.)

Defendants sell their counterfeit shirts through independent commercial websites and through webstores hosted on e-commerce sites like Shopify. (*Id.* ¶ 23.) Plaintiffs allege that Defendants work together to source infringing images and videos and to advertise cooperatively on social media. (*Id.* ¶ 25.) In addition to copying Teddy Stratford's images and videos for use in social media advertisements, in almost all cases investigated by Plaintiffs, the images and videos reposted on Defendants' webstores and websites were simply copied from Teddy Stratford. (*Id.* ¶ 26.) In that way, Defendants' webstores contain the Teddy Stratford Marks and are designed to resemble authorized retail stores selling genuine Teddy Stratford products. (*Id.* ¶ 32.) Each of these webstores offers shipping to, and has sold counterfeit products in, the United States, including Illinois. (*Id.* ¶ 34.)

Moreover, while Defendants seem independent of one another, in many cases they are in fact counterfeiting enterprises or "cartels" operating with a structure like a general partnership. (*Id.* ¶ 27.) Plaintiffs allege that the B-E Group Defendants are members of one such counterfeiting cartel headed by one of the members of the group. (*Id.* 13 ¶ 49.)[2] B-E Group stole Teddy Stratford's images and videos, featuring Davis, to run extensive advertising campaigns on Facebook and Instagram. (*Id.* 13 ¶ 50.) Many B-E Group Defendants also copied and pasted descriptions and other information from Teddy Stratford's website onto their own websites to create deceptive, nearly identical websites. (*Id.* ¶ 53.) Plaintiffs also contend that members of the

---

[2] The paragraph numbers in parts of the Amended Complaint appear to repeat in error. Specifically, there are paragraphs numbered 49–50 on page 12, and then again on page 13. For those two paragraphs, the Court includes both the page number and paragraph number in the citation.

B-E Group used the same third party to procure and advertise counterfeit Teddy Stratford shirts. (*Id.* ¶ 54.)

Plaintiffs' Amended Complaint asserts five counts against all Defendants. Count I is a federal trademark counterfeiting and infringement claim, pursuant to 15 U.S.C. § 1114. Count II is a claim for unfair competition and false designation of origin, pursuant to 15 U.S.C. § 1125(a). Count III alleges a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1. Count IV asserts a violation of the Illinois Right to Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq.* And finally, Count V alleges a civil conspiracy under Illinois law. Now before the Court is B-E Group Defendants' motion to dismiss for lack of personal jurisdiction, as to the six B-E Group Defendants without sales in Illinois, and for failure to state a claim, as to all B-E Group Defendants. (Dkt. No. 249.)

## DISCUSSION

B-E Group Defendants first argue that the Court lacks personal jurisdiction over the subset of those Defendants that did not sell any allegedly infringing products in Illinois. The Court refers to this group of six Defendants (eight total webstores) as "B-E Group One Defendants," consistent with the Court's previous Orders in this case. B-E Group Defendants then argue that Plaintiffs fail to state a claim for either trademark infringement or false designation of origin, the two federal causes of action, against any of them. They go on to assert that, if the federal claims are dismissed, it would be inappropriate for the Court to continue to exercise supplemental jurisdiction over the state-law claims. If the state-law claims are allowed to remain in federal court, however, B-E Group Defendants argue that New York law should apply under choice-of-law principles. And applying New York law, they believe Davis's right of publicity claim fails on the merits as a matter of law. Finally, B-E Group Defendants argue that

the civil conspiracy claim, analyzed under New York law, fails to meet the relevant pleading requirements.

### I. Personal Jurisdiction over B-E Group One Defendants

The Court begins with the personal jurisdiction argument. For a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If a court rules on a Rule 12(b)(2) motion based on the parties' written materials but does not hold an evidentiary hearing, the plaintiff need only make a *prima facie* case for personal jurisdiction. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). The Court takes the plaintiffs' asserted facts as true and resolves any factual disputes in their favor. *Id.* The Court "may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor." *Id.*

"[T]he Lanham Act does not have a special federal rule for personal jurisdiction . . . ." *Id.* So, as "subject-matter jurisdiction is predicated on the presence of a federal question and supplemental jurisdiction, this Court first looks to Illinois's long-arm statute." *Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty Ltd.*, No. 23-CV-02330, 2024 WL 325339, at *3 (N.D. Ill. Jan. 29, 2024). "The Illinois long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Id.* "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general or specific. *Walker v. Macy's Merch. Grp., Inc.*, No. 14 C 2513, 2016 WL 6089736, at *3 (N.D. Ill. Oct. 12, 2016). Here, Plaintiffs first attempt the untenable argument that the Court may exercise general personal jurisdiction over all B-E Group Defendants. "General jurisdiction applies to all suits regardless of whether they arise out of the defendant's forum-related activity." *Id.* But "it can be exercised only when the defendant has such 'continuous and systematic' contacts with the forum state that he or she can be deemed 'essentially at home' in the forum state." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "'The threshold for general jurisdiction is high,' because 'the contacts must be sufficiently extensive and pervasive to approximate physical presence.'" *Id.* (quoting *Tamburo*, 601 F.3d at 701). "A foreign corporation is considered 'at home' in its state of incorporation and its principal place of business." *Id.* General jurisdiction is not applicable here, however, where Defendants are all alleged to be based in China. Contrary to Plaintiffs' arguments, shipment of goods to the forum state does not create general personal jurisdiction.

Plaintiffs next argue that B-E Group One Defendants are nonetheless subject to specific personal jurisdiction in Illinois. "To be subject to specific personal jurisdiction in a forum state, the defendant must have purposefully directed its activities to the forum state, and the litigation must relate to those activities." *NBA Props., Inc.*, 46 F.4th at 621 (internal quotation marks omitted). When it comes to online sales, the "purposefully directed" prong of the personal jurisdiction analysis can be satisfied where a defendant "retailer both maintained commercial websites from which one could order goods to Illinois and . . . then knowingly did do business with Illinois residents." *Id.* at 624 (internal quotation marks omitted). There is no dispute that B-E Group One Defendants maintained commercial websites that were accessible in Illinois. And Plaintiffs argue that B-E Group One Defendants shipped hundreds of thousands of dollars in

goods to Illinois residents in 2023. (Pls.' Resp. Mot. to Dismiss 10–11, Dkt. No. 276.) Plaintiffs do not provide evidence of the asserted volume of sales.[3] But assuming these sales numbers are accurate, it would be appropriate to find that B-E Group One Defendants purposefully directed their activities to Illinois. *NBA Props., Inc.*, 46 F.4th at 624.

Still, Plaintiffs' argument fails on the second step of the analysis. "The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be *suit-related*." *Id.* at 625 (internal quotation marks omitted). "This requirement is met when direct sales from the defendant in the forum state involve the infringing product." *Id.* B-E Group One Defendants assert that they have zero sales of infringing products in Illinois. (B-E Group One Defs.' Decls., Dkt. Nos. 168–72, 175 (averring zero sales of allegedly infringing products in Illinois).) Plaintiffs have not presented conflicting affidavits, so the Court accepts Defendants' statements as true. *NBA Props., Inc.*, 46 F.4th at 620. Accordingly, Plaintiffs fail to carry their burden of showing that B-E Group One Defendants have the requisite minimum, suit-related, contacts with Illinois. Without those minimum contacts, specific personal jurisdiction is not appropriate.

Plaintiffs also allege that B-E Group Defendants are all participants in a civil conspiracy. In a final attempt to win the jurisdictional point, Plaintiffs assert that the Court may exercise personal jurisdiction under a "conspiracy theory of jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999) ("Under this theory, a court may assert jurisdiction over all of the co-conspirators, both resident and non-resident, based on their

---

[3] Plaintiffs state that the figures are based on documents produced by PayPal in response to Plaintiffs' subpoena. They further state that the "documents are available, should the Court desire." (Pls.' Resp. Mot. to Dismiss 11.) However, the brief does not provide any citation to documents in the record or attach the documents providing sales numbers.

involvement in a conspiracy which occurred within the forum."). This theory would extend personal jurisdiction to B-E Group One Defendants based on the Illinois sales of infringing products made by other B-E Group Defendants.

The availability of a conspiracy theory of personal jurisdiction in Illinois has been repeatedly questioned by both federal and state courts. *See Smith v. Jefferson Cnty. Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010) (non-precedential order noting that "the theory may not be valid in Illinois"); *Knaus v. Guidry*, 906 N.E.2d 644, 657–663 (Ill. App. Ct. 2009) (collecting authority and declining to apply conspiracy theory of personal jurisdiction); *Ploense v. Electrolux Home Prods., Inc.*, 882 N.E.2d 653, 668 (Ill. App. Ct. 2007) (rejecting conspiracy theory as potentially inconsistent with due process). Although there is a split among Illinois courts "on the viability of the doctrine," *Knaus*, 906 N.E.2d at 658, the Court finds the reasoning of those courts that decline to allow a conspiracy theory of personal jurisdiction more persuasive in the context of this case.

"It is elementary that the fact of liability does not confer jurisdiction; yet, by endowing a conspiracy with an independent jurisdictional significance, the conspiracy theory does just that." *Ploense*, 882 N.E.2d at 668 (cleaned up and internal quotation marks omitted). Still, there is no *per se* rule in Illinois preventing courts from exercising personal jurisdiction based on a conspiracy theory. *Cleary v. Philip Morris, Inc.*, 726 N.E.2d 770, 774 (Ill. App. Ct. 2000) ("To reject the conspiracy [theory] in all cases has the effect of giving those outside Illinois who have perpetrated an Illinois tort through the agency of others a potentially unfair immunity from suit."). However, the conspiracy theory of personal jurisdiction is premised on a view of the agency relationship that Illinois courts may no longer follow. *Ploense*, 882 N.E.2d at 666 ("Some 16 years after deciding [*Green v. Advance Ross Electronics Corporation*, 427 N.E.2d 1203], the

[Illinois] supreme court held that no agency relationship could exist between coconspirators ([*Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 571]), effectively scuttling the 'theory of jurisdiction' (stated in *Green* merely for the sake of description) whereby a coconspirator commits a tortious act in Illinois 'as agent for his coconspirators.'"). Other courts and commentators have observed that, in contrast with a traditional principal-agent relationship, "[i]n the context of conspiracy, . . . the agency between coconspirators is more fictional than real." *Knaus*, 906 N.E.2d at 661 (internal quotation marks omitted). Thus "[i]f the conspiracy theory of jurisdiction were applied in" a situation where a defendant had no control over or knowledge of the actions of another conspirator, "the result would be the exercise of jurisdiction over an individual who had neither personal contacts with the forum nor knowledge that the conspiracy of which he was a part would operate there." *Id.*

Perhaps as a result, "the courts of other jurisdictions [that] have recognized the conspiracy theory of jurisdiction as a basis of jurisdiction . . . nevertheless require a showing that conspirators conspired to do something that they could reasonably expect to lead to consequences in the forum" *Id.* (internal citations omitted) (collecting cases). And Supreme Court precedent still requires that "conduct sufficient to subject a foreign defendant to jurisdiction of a particular forum must involve, at the very least, an act purposefully directed at the forum state, such as conduct designed to create an injury in that state." *Id.* at 662 (collecting U.S. Supreme Court cases). So, even if a conspiracy theory of personal jurisdiction applies, it can only apply in a situation where a defendant's "actions in furtherance of the conspiracy" were "purposely directed towards Illinois." *Id.* at 663. Plaintiffs do not allege any acts in furtherance of the conspiracy by B-E Group One Defendants that are specific to Illinois. And where, as here, B-E Group One Defendants have no sales whatsoever of infringing products in Illinois,

subjecting them to personal jurisdiction based on a conspiracy theory of jurisdiction does not comport with the requirements of due process. *Ploense*, 882 N.E.2d at 668.

As a result, it would be inappropriate for the Court to exercise either general or specific personal jurisdiction over B-E Group One Defendants. Those Defendants must be dismissed without prejudice to Plaintiffs bringing their claims in the appropriate forum.

## II. Lanham Act Claims

B-E Group Defendants next argue that, as to the remaining Defendants subject to the Court's personal jurisdiction, all other claims must be dismissed for failure to state a claim. They begin by attacking the Lanham Act claims, which allege counterfeiting and trademark infringement (Count I) and unfair competition and false designation of origin (Count II). With respect to both claims, B-E Group Defendants assert that the Amended Complaint fails to allege that Defendants used Plaintiffs' registered trademarks. They also argue that "Zip Fit Shirt" is not protectable by trademark.

### A. Adequacy of Trademark Allegations

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

A defendant is liable for trademark infringement when they "use in commerce," without consent, "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Similarly, the Lanham Act imposes liability for using a trademark, or, among other things, "any false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods." *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016); 15 U.S.C. § 1125(a)(1). "To prevail on either type of claim, a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phoenix Ent. Partners*, 829 F.3d at 822.

Certainly, failure to allege that Defendants used the Teddy Stratford Marks would be fatal to Plaintiffs' claims. *Id.* And B-E Group Defendants argue that Plaintiffs fail to make this critical allegation. They characterize the Amended Complaint as not alleging that B-E Group Defendants used either the phrase "Teddy Stratford" or "Zip Fit Shirt." This argument is baseless. Plaintiffs clearly allege throughout the Amended Complaint that Defendants (including B-E Group Defendants) used the Teddy Stratford Marks without permission. (*E.g.*, Am. Compl. ¶¶ 17, 32, 35.) Moreover, on Plaintiffs' Exhibit 1, Plaintiffs allege with specificity that B-E Group Defendants used the Teddy Stratford Marks. (Ex. 1 to Am. Compl. 26–27, Dkt. No. 244.)

B-E Group Defendants correctly point out that this issue was already raised and briefed in connection with Plaintiffs' earlier motion for a preliminary injunction. (Order on Prelim. Inj. Mot. 3–4, Dkt. No. 246.) However, contrary to B-E Group Defendants' assertion, the Court did not deny the preliminary injunction as to these Defendants because it determined that Defendants

11

did not use the Teddy Stratford Marks. Rather, the Court noted that, due to the disorganization of Plaintiffs' evidence, the Court simply was unable to draw any conclusions about whether Defendants had infringed. (*Id.*) But in considering a Rule 12(b)(6) motion to dismiss, the Court is concerned with the adequacy of Plaintiffs' allegations, not their proof. As a result, the unruly nature of Plaintiffs' earlier submissions has no bearing on this ruling. Plaintiffs have plainly alleged that B-E Group Defendants used the Teddy Stratford Marks. Therefore, they have stated a claim for both of their Lanham Act counts.

### B.        "Zip Fit Shirt" Trademark

As mentioned above, to prevail on a Lanham Act claim, a plaintiff must be able to show that its mark is protectable. *Phoenix Ent. Partners*, 829 F.3d at 822. B-E Group Defendants argue that "Zip Fit Shirt" is a descriptive term and therefore not protectable by a trademark. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007) ("A seller must not be permitted to appropriate as the name of its brand a term by which the public knows the product category to which the brand belongs, for that would make it difficult for other sellers of the same product to describe their brands . . . ."). But "a trademark, like a patent, carries a presumption of validity." *Id.* at 485; 15 U.S.C. § 1115(a). That is the case even for a descriptive mark. *Custom Vehicles, Inc.*, 476 F.3d at 485. Although, "[i]n the case of a registered descriptive mark, . . . the presumption is that it has acquired secondary meaning." *Id.*

At this stage, the Court does not know whether the USPTO registered the "Zip Fit Shirt" mark because it is "inherently distinctive" or because it has "acquired distinctiveness," which must be the case for a descriptive mark. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 424 (7th Cir. 2019) ("The Lanham Act extends one of two presumptions—either that the mark is inherently distinctive *or* that it has acquired distinctiveness. Registration owners do not get

both." (internal citations and quotation marks omitted)). But critically, when deciding a motion to dismiss, that distinction does not matter. "Secondary meaning, like descriptiveness, is a question of fact . . . ." *Id.* It is a relevant inquiry when a defendant challenges a trademark's validity at the summary judgment stage, but not at the pleading stage. *Id.* (discussing presumptions in the context of summary judgment); *see also Custom Vehicles, Inc.*, 476 F.3d at 485 (same). All the Court knows from the pleadings is that the "Zip Fit Shirt" mark is registered with the USPTO and presumed valid. In deciding the motion to dismiss, that allegation is sufficient to support a claim for trademark infringement.

In sum, Plaintiffs' Lanham Act claims both survive the motion to dismiss. As a final note, because the Court does not dismiss the federal claims, it continues to exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367. The Court turns to those claims now.

### III.     IRPA Claim

First, B-E Group Defendants argue that New York, not Illinois, law should govern Davis's right of publicity claim. Then they argue that the claim fails on the merits when assessed under New York law.

Although B-E Group Defendants frame their argument as a choice-of-law issue, this is not a situation where the Court faces two conflicting common law regimes. Rather, Davis's claim is brought under the IRPA, an Illinois statute. The more on-point concern, therefore, is whether the IRPA has extraterritorial effect. "Under Illinois law, a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Azuz v. Accucom Corp.*, No. 21 C 1182, 2025 WL 2807653, at *7 (N.D. Ill. Oct. 2, 2025) (internal quotation marks omitted). The express provisions of the IRPA do not indicate

that the statute was intended to have extraterritorial effect, so it does not apply extraterritorially. *Id.*

Although the IRPA does not apply extraterritorially, "an Illinois law can be applied if 'the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois.'" *Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577, 2020 WL 5530134, at \*3 (N.D. Ill. Sept. 15, 2020) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005)). "However, this is a highly fact-based analysis that is generally inappropriate for the motion to dismiss stage." *Id.* Accordingly, it "is not an issue to be decided at the motion to dismiss stage." *Id.*

B-E Group Defendants' motion exemplifies why determining whether Illinois law can be applied is better left until a later stage of litigation. Their sole argument for the application of New York law is based on Davis being a New York resident.[4] However, there is no allegation on the face of the Amended Complaint as to where Davis lives. Thus, at this stage, the Court cannot assume he is a resident of New York. B-E Group Defendants' argument might be more successful if this claim reaches the summary judgment stage. But for now, they make no arguments challenging the merits of Davis's IRPA claim. Accordingly, the claim survives the motion to dismiss.

### IV. Civil Conspiracy Claim

Finally, B-E Group Defendants argue that Plaintiffs' civil conspiracy claim is not adequately pleaded. They discuss this claim under New York law. However, no choice-of-law analysis is necessary here. "A choice-of-law determination is required only when a difference in

---

[4] Teddy Stratford's place of incorporation (Delaware) and principal place of business (New York) is irrelevant, as the right of publicity is personal to Davis, not the company.

law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). Because multiple other claims remain in this litigation, B-E Group Defendants' observation that "New York does not recognize an independent cause of action for conspiracy to commit a civil tort," has no bearing on the outcome. *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585 (N.Y. App. Div. 2010). B-E Group Defendants identify no other relevant conflict between New York and Illinois law.

"A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (internal quotation marks omitted). Under federal pleading standards, allegations of a conspiracy "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Still, even with a claim of conspiracy, this pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555

Plaintiffs have sufficiently alleged a conspiratorial agreement between the B-E Group Defendants. The Amended Complaint asserts that those Defendants work together to steal infringing images and videos and that they cooperate in social media advertising. It specifically alleges an instance of one Defendant managing online advertisements for another Defendant. (Am. Compl. 7 n.4.) The Amended Complaint also alleges that Defendants structure their operations to partner with one another and with a third-party agent who selects and advertises products for sale. (*Id.* ¶ 28.) These factual allegations go beyond "parallel conduct and a bare assertion of conspiracy." *Twombly*, 550 U.S. at 557. And they allow for the plausible inference that B-E Group Defendants are engaged in a conspiracy to infringe Plaintiffs' trademarks and

15

violate Davis's right of publicity. Accordingly, Plaintiffs' civil conspiracy claim also survives the motion to dismiss.

## CONCLUSION

B-E Group Defendants' motion to dismiss (Dkt. No 249) is granted with respect to Defendants formlurgous.com, unfolbatle.com, generallyt.com, coherentm.com, embroideryn.com, converselyt.com, musicianp.com, and validityi.com, based on a lack of personal jurisdiction. The claims against those Defendants are dismissed without prejudice. *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022) (explaining that "dismissals for lack of personal jurisdiction" are "necessarily without prejudice"). The motion is denied as to all other B-E Group Defendants.

ENTERED:

Dated:  March 31, 2026

_____

Andrea R. Wood
United States District Judge

16